**MDC HOLDINGS, INC., a Delaware corporation and Richmond American Homes of Colorado, Inc., a Delaware corporation, Petitioners**

v.

**TOWN OF PARKER, a Colorado home rule municipal corporation and Town of Castle Rock, a Colorado home rule municipal corporation, Respondents.**

No. 08SC972.

Supreme Court of Colorado,
En Banc.

Feb. 8, 2010.

Silverstein & Pomerantz, LLP, Neil I. Pomerantz, Robert R. Gunning, Mark E. Medina, Denver, Colorado, Attorneys for Petitioners.

Mulliken Weiner Karsh Berg & Jolivet, P.C., Murray I. Weiner, Joseph L. Lambert, Rothgerber Johnson & Lyons LLP, Edward A. Gleason, Colorado Springs, Colorado, Attorneys for Respondents.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari in *Town of Parker v. MDC Holdings, Inc.*, No. 07CA1758, 2008 WL 4598270 (Colo.App. Oct.16, 2008) to review an unpublished court of appeals' decision enjoining the Executive Director of the Colorado Department of Revenue from hearing two tax appeals.[1] Petitioners MDC Holdings, Inc. and Richmond American Homes of Colorado, Inc. (collectively "MDC") sought a refund for allegedly overpaid use taxes on building materials in connection with its residential construction activities in the Towns of Castle Rock and Parker (collectively "Towns"), both of which are home rule municipalities.

The Finance Directors of both Towns denied MDC's refund requests, and MDC initiated the appeal process pursuant to the Towns' municipal codes and section 29–2–106.1, C.R.S. (2009), which provides a uniform statewide process governing municipal sales and use tax appeals. MDC requested and obtained a consolidated informal hearing by the Towns on its refund requests.

After the informal hearing, the law firm representing both Towns advised MDC in writing that the Towns' appeal process included provisions requiring a formal on the record hearing following the informal hearing. The law firm representing MDC in both appeals responded by letter that MDC would not be requesting a formal hearing because section 29–2–106.1(2)(c)(I) limited the Towns to conducting only the informal hearing as part of the statutory use tax refund appeals process. Accordingly, MDC requested that the Towns issue their final decisions on MDC's tax refund requests so that MDC would be in a position to exercise its appellate remedies. The Towns did not respond.

After waiting the required ninety-day statutory period, with no final decisions forthcoming from the Towns' Finance Directors, MDC filed its appeals with the Executive Director of the Department of Revenue, pursuant to section 39–21–103, C.R.S. (2009), as provided by section 29–2–106.1(3)(a). The Towns then asserted to the Executive Director that MDC had failed to exhaust its administrative remedies under the provisions of the Towns' municipal codes. In response, the Executive Director determined that MDC had properly complied with the appeal provisions applicable under the state statutes governing municipal tax refund requests made by taxpayers.

The Towns then filed a joint complaint for injunctive relief in the District Court for the City and County of Denver contesting the jurisdiction of the Executive Director to hear and determine MDC's tax refund appeals. The district court denied the injunction, determining that MDC had properly pursued its appeals to the Executive Director. The Towns appealed the denial of the injunction to the court of appeals.

The court of appeals determined that MDC had not timely appealed to the Executive Director because the letters from the Towns' law firm to MDC's law firm constituted the Towns' final decisions, and section 29–2–106.1(2)(c) required MDC to file its appeal with the Executive Director within thirty days after the taxpayer's exhaustion of local remedies. The court of appeals concluded that the Executive Director lacked jurisdiction to hear and determine MDC's tax refund appeals. We disagree and reverse the judgment of the court of appeals.

We hold that section 29–2–106.1 supersedes the Towns' codes, which require a formal hearing following the informal hearing; that the letters from the Towns' attorney to MDC's law firm did not constitute final decisions triggering the thirty-day deadline for appealing to the Executive Director; that MDC properly perfected its appeals follow-

---

1. We granted certiorari on the following issues: Whether the court of appeals erred in concluding that letters written by outside legal counsel for the respondents constituted "final decisions" in accordance with section 29–2–106.1(2)(c), C.R.S. (2008), that commenced petitioners' thirty-day period for filing an appeal notwithstanding that the letters specifically stated the respondents' position that the matters were not yet ripe for final decisions.

Whether the court of appeals erred in allowing the respondents to benefit from municipal procedures which conflict with the uniform statute and their own characterization regarding the finality of the decision contained in the letters.

ing the ninety-day statutory waiting period applicable here because the Towns failed to render final decisions; and that the Executive Director has jurisdiction to hear and determine MDC's tax refund appeals.

## I.

MDC paid use taxes to the Towns on building materials in connection with its residential construction activities. In March of 2005, alleging overpayment, MDC requested use tax refunds from the Towns. In December 2005, the Finance Directors of the Towns denied the refund requests. The Finance Directors signed the denials under the letterhead of their respective town. Both denials advised MDC that it had fifteen days from the date of the denial "to request a hearing on this denial," under section 4.03.110 of the Parker Sales and Use Tax Code and section 3.05.110 of the Castle Rock Tax Administration Code.

Both codes in effect at the time of the refund requests contained the following provision under the heading "Hearings":

*Informal hearing. If the taxpayer elects to participate in an informal hearing, which hearing must be held within thirty (30) days of the Director's receipt of the taxpayer's request for a hearing,* additional informal hearings shall not be permitted except at the discretion of the Director. *Informal hearings shall be conducted in any manner acceptable to the taxpayer and the Director* with the purpose of settling the outstanding issues between the parties. *If no settlement is reached, the taxpayer must request, in writing, a formal hearing on the record within fifteen (15) days after the informal hearing and the Director shall give notice of the formal hearing pursuant to subsection (b) above.* If the taxpayer fails to request a formal hearing within fifteen (15) days after the informal hearing, all further rights to a hearing and appeal are waived and the taxpayer shall be bound by the Notice of Final Determination—Assessment and Demand for Payment or final Denial of Refund.

Castle Rock, Colo., Tax Administration Code § 3.05.110(C) (2008); Parker, Colo., Sales and Use Tax Code § 4.03.110(c) (2008) (emphasis added).

Both codes contained the following provisions for a formal hearing and determination on the record:

*Director to conduct formal hearing. The hearing shall be held before the Director, or a hearing officer designated by the Director.* At the hearing, the taxpayer may assert any facts, make any arguments and file any briefs and affidavits he or she believes pertinent to his or her case. The taxpayer shall be notified of the name of the hearing officer fifteen (15) days before the hearing date, and any objection by the taxpayer to the hearing officer shall be filed in writing at least forty-eight (48) hours prior to the hearing. *All reasonable costs to the Town for a hearing officer must be paid by the taxpayer requesting the formal hearing when the hearing officer determines no change in the tax due.*

Castle Rock, Colo., Tax Administration Code § 3.05.110(D) (2008); Parker, Colo., Sales and Use Tax Code § 4.03.110(d) (2008) (emphasis added). Both codes also contained a provision for any taxpayer appeal therefrom to be conducted pursuant to C.R.C.P. 106(a)(4):

*Appeals. The taxpayer may appeal the Hearing Determination Notice of the Director issued pursuant to [the Towns' codes] within thirty (30) days of the date that such determination is sent by the Director. Such appeal shall be conducted pursuant to the terms of Rule 106(a)(4) of the Colorado Rules of Civil Procedure.*

Castle Rock, Colo., Tax Administration Code § 3.05.120 (2008); Parker, Colo., Sales and Use Tax Code § 4.03.120 (2008) (emphasis added).

On January 5, 2006, alleging that it had overpaid its use taxes in the amount of $176,141.92 for the period March 8, 2002, through December 31, 2004, to Parker and $158,616.58 to Castle Rock for the period January 1, 2003, through December 31, 2004, MDC filed its written appeals and requests for an informal hearing in accordance with section 29–2–106.1(2)(c) and the Towns' codes. MDC's letter to the Town of Parker

requesting the informal hearing states, in material part:

January 5, 2006

. . .

Mike Farina
Acting Finance
Town of Parker

. . .

Re: Appeal and Request for Informal Hearing

. . .

M.D.C. Holdings, Inc., together with its Colorado operating subsidiary, Richmond American Homes of Colorado, Inc. (collectively, "MDC" or "the Company"), hereby request *an informal hearing* of the Town of Parker's ("Parker") December 22, 2005 denial of the Company's claim for refund of sales and use taxes ("Claim"). This request is made *in accordance with C.R.S. § 29–2–106.1(2)(c) and Parker Municipal Code ("PMC") § 4.03.110(a) . . . . We look forward to an informal hearing to discuss these matters.*

(Emphasis added).

MDC made an identical request on January 5, 2006, addressed to Karen Feeney, Finance Director for the Town of Castle Rock, citing the state statute and Castle Rock Municipal Code § 3.05.110(A). A consolidated informal hearing involving the Towns and MDC occurred on February 10, 2006. On February 22, 2006, the law firm that represented both Towns sent on its letterhead identical letters to MDC's law firm. These letters commence with a statement that the Towns "[t]hank you for attending and participating in the February 10, 2006 meeting conducted pursuant to Section 4.03.110(c) of the Parker Municipal Code [and Section 3.05.110(C) of the Castle Rock Municipal Code]." Both of these code sections cited by the Towns' law firm are captioned "Informal Hearing"; both utilize the term "informal hearing" throughout; and neither contains the word "meeting" in their text.

The Towns' law firm letters go on to state that the Towns have a "better understanding" of MDC's position. They discuss why the Towns are not in a position to grant MDC's refund requests and advise MDC that it must pursue the formal on the record hearing provisions of the Towns' codes in order to obtain the Towns' final decisions. The letters end by cautioning MDC that failure to request the formal hearing will result in the Towns asserting that MDC failed to exhaust its local remedies:

Finally, at our meeting we had a brief discussion regarding the procedural posture of this matter. *You stated that you believed that by participating in the February 10, 2006 informal meeting held pursuant to [the Towns' codes], MDC/Richmond American Homes had exhausted local remedies and the matter was ripe for a final decision by the [Towns].* As we discussed, while I understand why you might read [the Towns' code provisions] as you have, *I believe that the provisions [of the Towns' code] are in the nature of mediation or settlement conference, not a hearing, and that a taxpayer seeking a refund from the [Towns] must request a hearing "if no settlement is reached" as set forth in [the Towns' code provisions relating to a "formal hearing"]. If this matter does not proceed to hearing as set forth in those sections of the [Towns' code], and MDC/Richmond American Homes decides to proceed as set forth in C.R.S. § 29–2–106.1, [the Towns] will likely take the position that MDC/Richmond American Homes failed to exhaust the local remedies set forth in the [Towns' codes].*

Feel free to contact me if you have any questions or if you would like to discuss further the position of the [Towns] in this matter.

(Emphasis added).

In its written responses to the letters of the Towns' law firm, MDC's law firm asserted that the Towns' formal hearing procedures conflicted with section 29–2–106.1; that MDC would not be requesting a formal hearing; and that the Towns should therefore issue their final decisions as required by section 29–2–106.1(2)(c).

*[MDC] is confident the formal hearing procedures [as defined by the Towns'*

*codes] conflict with governing state law, and therefore, [MDC], respectfully, will not request a formal hearing.* C.R.S. § 29–2–106.1 prescribes uniform appeal procedures applicable to any sales/use tax dispute involving a local government, including home rule municipalities. It establishes that a taxpayer need only submit to one informal hearing before a local government in order to exhaust its local remedies. [§ 29–2–106.1(2)(c).] Thereafter, the taxpayer may appeal any adverse decision either to the executive director of the State Department of Revenue or to district court, at its election.... Either appeal is conducted de novo.... *The Colorado Supreme Court has confirmed that these provisions preclude a home rule jurisdiction from requiring a taxpayer to submit to any hearing procedures that convey more limited appeal rights. See Walgreen Co. v. Charnes,* 819 P.2d 1039 (Colo.1991)....

[T]o the extent [the Towns do] not intend to reconsider any of the positions expressed [in the February 22, 2006 letters], we ask that the [Towns] issue a "final decision," as described in [§ 29–2–106.1(2)(c) ], so that we may proceed with further appeals.

(Emphasis added).

Neither the Towns' Finance Directors nor the Towns' law firm responded to MDC's request for a final decision. After waiting the ninety-day statutory time period for filing an appeal pursuant to section 39–21–103, as provided by section 29–2–106.1(3)(a), MDC filed its use tax refund appeals with the Executive Director of the Department of Revenue.

Based on an alleged failure to exhaust administrative remedies, the Towns challenged the jurisdiction of the Department of Revenue to hear the appeals. The Executive Director ruled that it had jurisdiction over the appeals:

It is my ruling that the informal "hearing" held between the parties on February 10, 2006 per 3.05.110(C) and 4.03.110(c) of Castle Rock and Parker's respective codes

*satisfies the requirements of section 29–2–106.1(2)(b) C.R.S.* The Towns of Castle Rock and Parker were required to issue a written decision per section 29–2–106.1(2)(c)(I) C.R.S., "such hearing shall be held and the decision thereon issued within one hundred eighty days of the taxpayer's request in writing therefor." [2] *Richmond Homes exhausted their local remedies when the Towns of Castle Rock and Parker failed to issue a written decision within the required period, section 29–2–106.1(2)(c)(II) C.R.S.*

(Emphasis added).

The Towns then filed with the District Court for the City and County of Denver their joint complaint for injunctive relief prohibiting the Executive Director from hearing MDC's use tax refund appeals. Agreeing with the Executive Director and MDC that MDC had properly exhausted its local administrative remedies as defined by section 29–2–106.1 and had timely appealed to the Executive Director, the district court dismissed the injunction in favor of the Executive Director's jurisdiction to hear the appeals.

The district court made the following findings of fact in connection with MDC's exhaustion of local remedies:

3. On January 5, 2006, [MDC], through its counsel, filed with the respective finance directors appeals of the Refund Claim denials. These appeals specifically requested informal hearings in accordance with C.R.S. § 29–2–106.1(2)(c). There is no dispute that [MDC] timely filed these appeals with the Towns. The Towns and [MDC] conducted simultaneous informal hearings on February 10, 2006. The finance directors for each of the Towns participated in those hearings, accompanied by the Towns' outside legal counsel....

4. By correspondence dated February 22, 2006, [the Towns' outside legal counsel] described his role as "special counsel" to the Towns and stated that the Towns continued to reject the positions articulated by [MDC] in support of the Refund Claims.

**2.** Although the Executive Director references the 180–day time period provided by section 29–2–106.1(2)(c)(I), there are no allegations that MDC

occasioned any delay in the issuance of a final decision. Consequently, the ninety-day period applies.

Two days later, on February 24, 2006, counsel for [MDC] responded by letters addressed to [the Towns' outside legal counsel]. These letters addressed the substantive arguments [the Towns' outside legal counsel] had made in his February 22 letters, and concluded with the following: "however, to the extent [the Towns do] not intend to reconsider any of the positions expressed in your letter, we ask that the [Towns] issue a 'final decision,' as described in [§ 29–2–106.1(2)(c) ], so that we may proceed with further appeals." The Towns never responded to this specific request that they issue appealable final decisions.

5. Receiving no final decisions from the Towns within the time allotted by C.R.S. § 29–2–106.1(2)(c), [MDC] requested hearings before the Executive Director by protests dated May 4, 2006. The May 4, 2006 request complied with statutory requirements as, when no final decision issued from the Towns within ninety days of [MDC's] January 5, 2006 appeals (i.e. by April 5, 2006), a thirty day clock began to run for [MDC] to take its appeals to the Executive Director. The Department of Revenue ("Department") thereafter assigned the appeals to Mr. Robert Smit, one of the Department's assistant tax conferees. Towns objected to the Executive Director's jurisdiction over [MDC's] appeals. In response, Mr. Smit stated the Department's position that the Towns had held informal hearings on February 10, 2006, but had failed to issue final decisions within the time prescribed by [§ 29–2–106.1(2)(c)(I) ]. [MDC] had therefore properly taken its appeal to the Executive Director.

In rendering its judgment, the district court relied on section 29–2–106.1 and our decision interpreting this statute in *Walgreen Co. v. Charnes*, 819 P.2d 1039 (Colo.1991).

Concluding that MDC had not timely invoked the jurisdiction of the Executive Director, the court of appeals reversed the district court and enjoined the Executive Director's proceedings. We disagree with the court of appeals.

We agree with the district court, the Executive Director, and MDC that the Executive Director has jurisdiction to hear MDC's tax refund appeals. We conclude that the state statutes and our decision in *Walgreen* control our decision in this case. Accordingly, we reverse the judgment of the court of appeals and direct it to return this case to the district court for dismissal of the Towns' injunction complaint.

## II.

We hold that section 29–2–106.1 supersedes the Towns' codes, which require a formal hearing following the informal hearing; that the letters of the Towns' attorney to MDC's law firm did not constitute final decisions triggering the thirty-day deadline for appealing to the Executive Director; that MDC properly perfected its appeals following the ninety-day statutory waiting period applicable here because the Towns failed to render final decisions; and that the Executive Director has jurisdiction to hear and determine MDC's tax refund appeals.

### A. Standard of Review

■■■ The grant or denial of a preliminary injunction lies within the sound discretion of the trial court. *Evans v. Romer*, 854 P.2d 1270, 1274 (Colo.1993). The injunction action in this case proceeded before the district court under the simplified procedure of C.R.C.P. 16.1 and the record consists of stipulated documentary materials. Accordingly, our review and decision, like the district court and the appellate court, is de novo on all issues of fact and law. *Evans*, 854 P.2d at 1274; *see also Lane v. Urgitus*, 145 P.3d 672, 680 (Colo.2006) ("[W]e may base our legal conclusion upon that documentary evidence and do not depend upon a trial court's factual findings or interpretation of that evidence."); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1195 (Colo.2005) ("We review the documentary evidence de novo."); *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo.1994) (stating that "when facts are presented to the trial court by stipulation . . . an appellate court may draw its own conclusions").

■ Statutory interpretation is a question of law subject to de novo review. *Sperry v. Field*, 205 P.3d 365, 367 (Colo.2009). Interpretation of a municipal ordinance involves a question of law subject to de novo review. *Town of Erie v. Eason*, 18 P.3d 1271, 1274 (Colo.2001); *see also City of Commerce City v. Enclave West, Inc.*, 185 P.3d 174, 178 (Colo.2008) (stating that we may consider but are not bound by an agency's interpretation of its code provisions). The rules of statutory construction apply in the interpretation of statutes and local government resolutions and ordinances. *See City of Colorado Springs v. Securcare Self Storage, Inc.*, 10 P.3d 1244, 1248 (Colo.2000); *Steamboat Springs Rental & Leasing, Inc. v. City & County of Denver*, 15 P.3d 785, 787 (Colo. App.2000).

■ Our primary task when interpreting local government legislation is to determine and give effect to the intent of the body enacting it. *Serv. Merch. Co. v. Schwartzberg*, 971 P.2d 654, 658 (Colo.App.1997). We first look to the language employed and, if unambiguous, apply it as written unless doing so would lead to an absurd result. *See In re Marriage of Chalat*, 112 P.3d 47, 54 (Colo.2005); *People v. Luther*, 58 P.3d 1013, 1015 (Colo.2002). If possible, we read ordinances as a whole, giving consistent, harmonious, and sensible effect to all parts. *Crow v. Penrose–St. Francis Healthcare Sys.*, 169 P.3d 158, 165 (Colo.2007).

■ We construe statutes and ordinances pertaining to the same subject matter in pari materia, giving effect to all applicable provisions and avoiding illogical results. *Walgreen*, 819 P.2d at 1043. Local government legislation that purports to supplant or undercut provisions of superseding state statutes is inoperative. *See id.* at 1049 n. 19; *see also Schwartzberg*, 971 P.2d at 659.

■ In matters of purely local concern, the local government's legislation prevails over a conflicting state statutory provision. *Voss v. Lundvall Bros., Inc.*, 830 P.2d 1061, 1066 (Colo.1992). In matters of purely statewide concern, the state statute supersedes a conflicting home-rule provision. *Id.* In matters of mixed state and local concern, a home-rule legislative provision may coexist with a state provision if there is no conflict between the local and state provisions; in the event of a conflict, the state provision controls. *Id.*

## B. The Statewide Uniform Statute Governing Tax Appeals Supersedes Conflicting Local Government Provisions

Enacted in 1963, the General Assembly promulgated the County and Municipal Sales or Use Tax Act, §§ 29–2–101 to –113, C.R.S. (2009), in an effort to standardize the way local governments impose sales and use taxes. *See* § 29–2–101. Determining that the imposition of sales and use taxes affected the intrastate flow of commerce, the General Assembly wanted to "provide a higher degree of uniformity in any [ ] taxes imposed by [local governments]." *Id.*

Incorporated into this statewide structure, section 29–2–106.1 defines the process for bringing appeals of local sales and use tax assessments as well as taxpayer overpayment refund requests. The General Assembly enacted section 29–2–106.1 because the "enforcement of sales and use taxes can affect persons and entities across the jurisdictional boundaries of taxing jurisdictions and ... dispute resolution is a matter of statewide concern." § 29–2–106.1(1). The General Assembly recognized that local municipalities had created differing methods of challenging sales or use tax assessments, resulting in confusion, delay, burdensome costs, and conflicting results in processing tax collection and refund cases across the state. Consequently, the General Assembly set forth the appellate procedure to be "applied uniformly throughout the state." *Id.*

Thus, the legislature created in section 29–2–106.1 a uniform appeals process by which a taxpayer may challenge a local government sales or use tax assessment, or obtain a refund for overpaid taxes. This statute defines steps at the local and state level applicable to exhaustion of local remedies. *See* § 29–2–106.1(2)(c)(I)–(II).

The state statute explicitly defines "exhaustion of local remedies." § 29–2–106.1(2)(c). In regard to a taxpayer appeal to the local government from denial of a

refund request, the statute provides that the local government can conduct only an informal hearing. § 29–2–106.1(2)(c)(I). The local government must issue a final decision on the taxpayer's appeal no later than ninety days following the taxpayer's written request for the informal hearing. *Id.* The taxpayer has thirty days following the local government's final decision to take an appeal to the Executive Director of the Colorado Department of Revenue or, in the alternative, to the district court if only one local government is involved. § 29–2–106.1(3)(a), (8)(a). At all possible appeal levels—local government, Executive Director, or district court—the standard of review is de novo. § 29–2–106.1(3)(d); § 39–21–105(2)(b).

Section 29–2–106.1(2), in applicable part, provides as follows:

(b) *The taxpayer shall also have the right to elect a hearing pursuant to subsection (3) of this section on a local government's denial of such taxpayer's claim for a refund of sales or use tax paid.*

(c) *The taxpayer shall request the hearing pursuant to subsection (3) of this section within thirty days after the taxpayer's exhaustion of local remedies.* The taxpayer shall have no right to such hearing if he has not exhausted local remedies or if he fails to request such hearing within the time period provided for in this subsection (2). *For purposes of this subsection (2), "exhaustion of local remedies" means:*

(I) *The taxpayer has timely requested in writing a hearing before the local government, and such local government has held such hearing and issued a final decision thereon. Such hearing shall be informal and no transcript, rules of evidence, or filing of briefs shall be required;* but the taxpayer may elect to submit a brief, in which case the local government may submit a brief. *Such hearing shall be held and the final decision thereon issued within ninety days after the local government's receipt of the taxpayer's written request therefor,* except the period may be extended if the delay in holding the hearing or issuing the decision thereon was occasioned by the taxpayer, but, in any such event, such hearing shall be held and the

decision thereon issued within one hundred eighty days of the taxpayer's request in writing therefor.

(II) *The taxpayer has timely requested in writing a hearing before the local government and such local government has failed to hold such hearing or has failed to issue a final decision thereon within the time periods prescribed in subparagraph (I) above.*

(Emphasis added). Section 29–2–106.1(3), in applicable part, provides as follows:

(a) *If a taxpayer has exhausted his local remedies as provided in paragraph (c) of subsection (2) of this section, the taxpayer may request the executive director of the department of revenue to conduct a hearing on such* deficiency notice or *claim for refund,* and such request shall be made and such hearing shall be conducted in the same manner as set forth in section 39–21–103, C.R.S. Any local government to which the deficiency notice being appealed claims taxes are due, or, in the case of a claim for refund, the local government which denied such claim, shall be notified by the executive director that a hearing is scheduled and shall be allowed to participate in the hearing as a party . . . .

(d) *Any hearings before the executive director of the department of revenue or his delegate shall be de novo, without regard to the decision of the local government. The taxpayer shall have the burden of proof in any such hearings.*

(Emphasis added). Section 29–2–106.1(7), in applicable part, provides as follows:

*Appeals from the final determination of the executive director may be taken [to the district court] in the same manner as provided in and shall be governed by section 39–21–105, C.R.S., by any party bound by the executive director's decision. Any such appeal shall be heard de novo and shall be heard as provided in section 39–21–105, C.R.S. . . .*

(Emphasis added).

Pursuant to section 29–2–106.1(8), if the appeal from the local government's final decision denying the taxpayer's refund request involves only one local government, the tax-

payer may elect to file an appeal directly with the district court for the district where the local government is located, in lieu of appealing to the executive director. The district court's review is de novo, pursuant to section 39–21–105. *See* § 29–2–106.1(8)(c).

In *Walgreen,* we construed and gave effect to section 29–2–106.1. Denver's home rule code provided for any taxpayer sales or use tax appeal from a Manager of Revenue decision to proceed under C.R.C.P. 106(a)(4) to the district court, limited to an abuse of discretion or excess of jurisdiction standard of review. We determined that the local code conflicted with section 29–2–106.1's provision for de novo review by the district court. *Walgreen,* 819 P.2d at 1049. Based on the General Assembly's finding that the enforcement of sales and use taxes is a matter of statewide concern, we employed our review criteria for resolving matters of mixed state and local concern.

First, we determined that allowing Denver to prescribe the forum and standard of review for an appeal to the district court would invite each local statutory or home rule government to specify its own appeal procedures for locally imposed sales or use taxes. *Id.* at 1046–47. This would result in multiple appellate procedures from which district courts would be forced to choose when presiding over appeals taken from fundamentally similar tax assessments and is contrary to article VI, section 19, of the Colorado Constitution, which requires laws relating to state courts to be general and of uniform operation throughout the state. *Id.*

Second, in accordance with the General Assembly's declaration, we found that the appellate process governing locally imposed sales or use taxes is a matter of statewide concern subject to regulation by the General Assembly. *Id.* at 1047.

Third, we held that the local revenue manager's decision on a taxpayer appeal is quasi-judicial in nature, and that the General Assembly has authority to establish rules governing access to reviewing courts, including adoption of a de novo standard of review. *Id.*

Fourth, we concluded that section 29–2–106.1 defines uniform statewide procedures applicable to appeals taken from locally imposed sales or use taxes. *Id.* at 1049.

We concluded our opinion with a footnote. It states that, while we do not find the Denver Municipal Code provisions unconstitutional, they are nevertheless "inoperative to the extent that a taxpayer seeks relief pursuant to § 29–2–106.1." *Id.* at 1049 n. 19.

### C. Application to This Case

The Towns contend that MDC failed to exhaust its administrative remedies and that the Executive Director lacks jurisdiction over MDC's tax refund appeals. MDC replies that (1) the Towns' appellate process for taxpayer appeals conflicts impermissibly with section 29–2–106.1 and (2) MDC exhausted its local remedies in accordance with the state statute for the purpose of vesting jurisdiction in the Executive Director to hear the appeals. We agree with MDC.

Starting with its very first letters of January 5, 2006, to both Towns appealing the finance directors' denials of its tax refund requests, MDC invoked the appellate remedies set forth in section 29–2–106.1 and the counterpart informal hearing code provisions of both Towns. The Towns' sales and use tax code provisions in effect when MDC commenced its tax refund appeal were substantially similar to each other.[3] They provided for an informal hearing, at the taxpayer's request. The informal hearing requested by MDC in this case occurred on February 10, 2006. This is acknowledged by the letters of the Towns' law firm dated February 22, 2006: "Thank you for attending and participating in the February 10, 2006 meeting conducted pursuant to Section 4.03.110(c) of the Parker Municipal Code [and Section 3.05.110(C) of the Castle Rock Municipal Code]." Both of these code sections provide for an "informal hearing." Although the Towns' law firm referred to this informal hearing as a "meet-

---

**3.** The Town of Castle Rock codified its code provisions in 1983, *see* Castle Rock, Colo., Municipal Code § 1.01.010 (2009), and the Town of Parker codified its code provisions in 1990, *see*

Parker, Colo., Municipal Code § 1.01.010 (2009). The Towns have recently deleted the provision requiring C.R.C.P. 106(a)(4) review.

ing," the Towns' codes themselves contradict this characterization. The district court's findings of fact determined that the Towns held the informal hearing on February 10, 2006, required under their codes and section 29–2–106.1(2)(c). The district court further found that the Towns did not issue final decisions, thereby triggering the ninety-day wait period for MDC's appeal to the Executive Director.

We are required to construe the codes according to their plain wording and meaning. *See In re Marriage of Chalat*, 112 P.3d at 54; *Luther*, 58 P.3d at 1015. The Towns contend that their codes required MDC to participate in a formal hearing, which MDC failed to request. The Towns' codes provided that the formal hearing would be followed by C.R.C.P. 106(a)(4) review of the record in the district court. This locally-prescribed appellate procedure—requiring a formal hearing following the informal hearing and C.R.C.P. 106(a)(4) review—irreconcilably conflicts with section 29–2–106.1—providing for only an informal hearing before the local government, a final decision by the local government within ninety days of the taxpayer's request for the informal hearing, and the taxpayer's right to appeal to either the Executive Director and then to the district court where the local government is located or directly to the district court if only one local government is involved.

By utilizing a hearing officer, the Towns' appellate process is designed to produce a record reviewable by the Executive Director and the district court with a standard of review that is deferential to the Towns' decision on a taxpayer's refund request. In contrast, the state statute provides for one informal hearing and a de novo standard of review at both the local and state levels. *See* § 29–2–106.1(2)–(3).

In accordance with our decision in *Walgreen*, the appellate process for reviewing the denial of a taxpayer's use tax refund request at the local and state levels is a matter of mixed local and state concern. The General Assembly has determined the need for a statewide uniform process—to avoid inconsistent treatment of taxpayers and confusing and conflicting remedies. At the time MDC was attempting to exercise its appellate rights, the Towns' codes and the actions of the Towns' Finance Directors and the Towns' law firm attempted to funnel MDC into a formal on the record process at the local level and to impose a standard of review inconsistent with the controlling state statute and our precedent in *Walgreen*.

Under *Walgreen*, the features of the Towns' codes that conflict with section 29–2–106.1, namely the provisions requiring a formal hearing and review by the district court pursuant to C.R.C.P. 106(a)(4), were legally "inoperative" at the time MDC made its tax refund requests. *See Walgreen*, 819 P.2d at 1049 n. 19. A local government is not free to ignore or frustrate the taxpayer's effort to exercise its appellate rights. The state statute contains its own controlling prescription for "exhaustion of local remedies" that defines and controls the appellate process in local sales and use tax appeals.

Here, MDC clearly brought the Towns' attention to section 29–2–106.1. Articulated by the Towns' law firm in the February 2006 letters, the Towns' position was that the informal hearing MDC had requested and attended was only in the nature of mediation or settlement and that MDC would have to invoke and utilize the Towns' requirement for a formal on the record hearing, in order to exhaust its local remedies as a precondition to further appellate review. In response, MDC's law firm plainly pointed out the erroneous nature of this view, in light of section 29–2–106.1's specific definition of what constitutes exhaustion of local remedies.

Contrary to the Towns' position, section 29–2–106.1(2)(c)(I) and (2)(c)(II) required the Towns issue their final decision after the informal hearing and, in any event, no later than ninety days after MDC's request for the informal hearing. Section 29–2–106.1(2)(c)(I) states that after a hearing, the local government shall "issue[ ] a final decision thereon." However, the statute does not define what a final decision entails, so we first look to its plain meaning. *See In re Marriage of Chalat*, 112 P.3d at 54; *Luther*, 58 P.3d at 1015.

"Final" means "not to be altered or undone." *Webster's Third New Interna-*

*tional Dictionary* 851 (1961). A final decision marks the consummation of the agency's decision-making process and is one from which legal consequences flow. *Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal quotation and citation omitted); *see also Janssen v. Denver Career Serv. Bd.*, 998 P.2d 9, 12 (Colo.App.1999). A final decision is conclusive of the issue presented. *See In re Tonko*, 154 P.3d 397, 405 n. 4 (Colo.2007). Accordingly, if the procedure underlying the decision is not complete, the decision cannot be final. *Cf. Civil Serv. Comm'n v. Carney*, 97 P.3d 961, 967 (Colo.2004) (stating that "judgment in a case is deemed final when it ends the particular action . . . leaving nothing further for the court pronouncing it to do. . . .").

The Towns' February 22, 2006 letters, in contravention of section 29–2–106.1, took the position that MDC must consent to a formal hearing in order to obtain the Towns' final decision. The Towns' codes provide for the Finance Director to send a "Hearing Determination Notice" to the taxpayer following the formal hearing. Castle Rock, Colo., Tax Administration Code § 3.05.110(H) (2008); Parker, Colo., Sales and Use Tax Code § 4.03.110(h) (2008). This Hearing Determination Notice sets forth "the amount of claim for refund denied . . ., stating therein the grounds for allowance or rejection in whole or in part." Castle Rock, Colo., Tax Administration Code § 3.05.110(H) (2008); Parker, Colo., Sales and Use Tax Code § 4.03.110(h) (2008). Finally, the Towns' code provisions provide for the taxpayer to appeal to the Department of Revenue after receipt of the Hearing Determination Notice. Castle Rock, Colo., Tax Administration Code § 3.05.120 (2008); Parker, Colo., Sales and Use Tax Code § 4.03.120 (2008).

■■■ Because the Towns had no provisions for making a final decision following the informal hearing, the lack of a final decision triggered the ninety-day wait period under the state statute—relating to failure to issue a final decision—before MDC could appeal. § 29–2–106.1(2)(c)(I)–(II). Moreover, both the Executive Director and the district court found that the Towns had failed to issue a final decision within the time prescribed by statute. *See id.*

■■■ The court of appeals' unpublished opinion states that the Towns' February 22, 2006 letters constituted final decisions because "(1) the [T]owns had reached definitive positions, which were neither tentative nor interlocutory; (2) their positions were the consummation of the [T]owns' decision-making process; and (3) their positions inflicted injury on the taxpayer by denying the taxpayer's requests for a refund." Slip op. at 8–9. We disagree.

The Towns' February 22, 2006 letters stated that they were meant to respond "to the issues and questions raised at the February 10, 2006 meeting." The Towns' letters maintained that the "meeting" was "in the nature of mediation or settlement conference, not a hearing. . . ." The letters merely summarized the points discussed during the "meeting." They advised MDC to request the formal on the record hearing to comply with section 29–2–106.1's local remedy exhaustion requirement. The Towns flatly stated that the matter would not be ripe for a final decision absent the Towns' formal hearing.

As such, the only definitive position taken by the Towns in the February 22, 2006 letters was that MDC still had one more hoop to jump through. The letters concluded, "[f]eel free to contact me if you have any questions or if you would like to discuss further the position of the [Towns] in this matter."

In its response on February 24, 2006, MDC informed the Towns that it would not seek a formal on the record hearing because the state statute did not require such a hearing. MDC asked that the Towns reconsider the refund denial and stated, "to the extent [the Towns do] not intend to reconsider any of the positions expressed in [the February 22, 2006] letter, we ask that the [Towns] issue a 'final decision,' as described in [section 29–2–106.1(2)(c) ], so that we may proceed with further appeals." The Towns did not respond.

A comparison of the Towns' December 2005 Finance Director letters and the February 2006 law firm letters offers additional

support that the February 2006 letters were not the Towns' final decisions. The Finance Directors' December 2005 denials of MDC's use tax refund requests included a bold section heading titled "Denial of Application for Sales/Use Tax Refund." This section made it clear that the Towns had initially denied MDC's refund request for the purpose of commencing appellate review at the local level. The Towns' February 22, 2006 law firm letters contained no such heading titled "Denial of Application for Sales/Use Tax Refund."

Although the Towns now contend before us that the letters from their law firm constituted final decisions requiring MDC to appeal to the Executive Director within thirty days, a plain and fair reading of these letters reveals only that the Towns were attempting to obtain MDC's acquiescence to appellate provisions of the Towns' codes that impermissibly contradict the state statute. Whereas the Towns' initial denials of MDC's use tax refund requests appeared on the letterheads of the Towns' Finance Directors, the letters of the Towns' law firm do not exhibit either the form or substance of a final local government denial of a use tax refund appeal. Instead, the February 22, 2006 letters recite the Towns' position that they are not able to issue a final decision in the absence of a formal on the record hearing. Thus, we determine that the Towns' February 22, 2006 letters were not final decisions as contemplated by section 29–2–106.1(2)(c)(I).

Section 29–2–106.1(2)(c)(I) and (2)(c)(II) specifically addresses a local government's failure to issue its final decision on a taxpayer use tax refund request. Here, MDC made a written request for an informal hearing on January 5, 2006. A hearing, satisfying the requirement contained in section 29–2–106.1(2)(c)(I), was held on February 10, 2006. On February 22, 2006, the Towns sent MDC letters memorializing each party's position as discussed during the informal hearing. By letters dated February 24, 2006, MDC requested that the Towns issue a final decision. The Towns did not respond. MDC was required to wait ninety days from January 5, 2006—the date of its written request for an informal hearing—for a final decision from the Towns. *See* § 29–2–106.1(2)(c)(I)–(II). The ninety-day period expired on April 5, 2006, making MDC's request for a hearing before the Department of Revenue due no later than May 5, 2006, under the thirty-day requirement for filing an appeal at the state level. *See id.* MDC timely filed its appeal with the Executive Director on May 4, 2006.

MDC properly exhausted its local remedies in this case and perfected its appeal to the Executive Director. The Executive Director has jurisdiction to hear and determine MDC's tax refund appeals de novo.

### III.

Accordingly, we reverse the judgment of the court of appeals and remand this case with directions that it return this case to the district court for dismissal of the Towns' injunction complaint against the Executive Director.

Justice COATS dissents, and Chief Justice MULLARKEY and Justice EID join in the dissent.

Justice COATS, dissenting.

Like the majority, I would reject the court of appeals' determination that letters from the Towns' lawyers constituted final decisions denying the taxpayer's claims for refund, but I would nevertheless affirm the judgment of that court for the reason that I believe the taxpayer failed to exhaust its local remedies within the meaning of section 29–2–106.1 of the revised statutes. In my view, the majority substantially misconstrues both the statute and our holding in *Walgreen,* leading it to declare "legally inoperative" the hearing provisions of the Towns' codes—a conclusion we expressly rejected in that case. The only question properly raised by the circumstances of this case is whether the taxpayer ever submitted itself to a decision by the Finance Directors of the Towns, a precondition for the exhaustion of its local remedies permitting a new hearing by the state, and I believe the record demonstrates that it did not. I therefore respectfully dissent.

In *Walgreen Co. v. Charnes,* we held that "the appellate process governing locally imposed sales and use taxes is a matter of state

concern and is thus subject to regulation by the General Assembly." 819 P.2d 1039, 1047 (Colo.1991). Although we rejected Denver's claim to provide for the *exclusive* method of reviewing its own sales and use tax decisions, we acknowledged that the applicable state statute contemplates the continued viability of local sales and use tax decision-making procedures and merely permits taxpayers to choose an alternate statutory method of challenging local decisions. *See* § 29–2–106.1(9), C.R.S. (2009) ("In lieu of electing a hearing pursuant to this section on a notice of deficiency or claim for refund, a taxpayer may pursue judicial review of a local government's final decision thereon as otherwise provided in such local government's ordinance."). We therefore also rejected Walgreen's contention that the sales and use tax articles of Denver's municipal code were null, void, and unconstitutional. *Walgreen*, 819 P.2d at 1042, 1049 n. 19.

The statutory scheme provides for "review" of a local government's denial of a taxpayer's claim for a refund of sales or use tax by a de novo hearing before the Executive Director of the Department of Revenue or, in some circumstances, directly in the district court. § 29–2–106.1(3), (8).[1] The taxpayer may only request such a de novo hearing after it has exhausted its local remedies, *see* subsection (2)(c), and the exhaustion of those remedies is statutorily defined to require a written request for a hearing before the local government and either a final decision or failure of that government to make a final decision within ninety days of the request, *see* subsections (2)(c)(I), (II). The statute, however, does not purport to prescribe the particular incidents of such a local hearing, indicating instead (as is perfectly consistent for a hearing the outcome of which is subject to challenge by a de novo hearing rather than appellate review) merely that it is to be informal, without requiring a transcript of the proceedings, application of the rules of evidence, or the filing of briefs. *See* subsection (2)(c)(I).

Although I think it clear that the majority errs by interpreting the statute's enumeration of characteristics not "required" of such a hearing as a statutory bar to their inclusion,[2] the real question should be whether the taxpayer ever requested, or was willing to subject itself to, a local hearing at all. Whatever else the statute contemplates by the term "hearing," it surely intends a proceeding (however informal and however challengeable by the presentation of new evidence and arguments at a de novo hearing) at which evidence can be taken and a decision-maker can resolve the issue, one way or the other. The record demonstrates that the taxpayer in this case steadfastly refused to subject itself to a hearing at which the Towns' Finance Directors would have authority to deny its claim; and instead, it expressly offered to participate only in the "informal hearing" permitted by the local codes, which in their lexicon and according to their explicit definitions was nothing more than a settlement conference at which the parties could attempt to reach agreement and thereby avoid an actual decision-making hearing.[3]

After *Walgreen*, it was clearly within the discretion of the taxpayer to challenge any adverse rulings by the local governments, at its choice, according to either statutory or locally-prescribed procedures. The taxpayer therefore could not, under any circum-

---

1. The statute does not appear to use the term "review" at all. Rather, it expressly permits the taxpayer to "elect" or "request" a hearing to be conducted by the Executive Director of the Department of Revenue or his delegate, "in the same manner as set forth in section 39–21–103, C.R.S.," and to be conducted "de novo, without regard to the decision of the local government." § 29–2–106.1(2), (3). In *Walgreen*, we somewhat confusingly referred to this de novo hearing process as a "de novo review," *see, e.g., Walgreen*, 819 P.2d at 1049, and the majority continually refers (perhaps even more confusingly) to the statute as providing for a "de novo standard of review."

2. It seems particularly unpersuasive to construe this language as barring a local government from recording the hearing, as the majority appears to do.

3. Unlike the majority, I would not treat as a finding of fact, entitled to deference by this court, any determination by either the Executive Director or the district court that the taxpayer's limited request for the "informal hearing" offered by the local codes amounted to a request for a hearing that could satisfy the statutory requirement to exhaust local remedies.

stances, have been limited to the abuse of discretion review prescribed by C.R.C.P. 106, regardless of any provisions of the local ordinances to the contrary. By the same token, however, the taxpayer should not be permitted to simply bypass a ruling by the local governments and proceed in the first instance directly to a state decision-maker, by mixing and matching isolated provisions of the local and state codifications, which have meaning only in the comprehensive scheme of one or the other code. Regardless of any superficial similarities in nomenclature, the taxpayer not only failed, but in fact refused, to request a "hearing" within the meaning of section 29–2–106.1(2)(c)(II) and therefore failed to comply with the statutory requirement for "exhaustion of local remedies."

I do not believe the taxpayer's statutory right to a de novo hearing by the Department of Revenue was ever threatened. MDC simply refused to submit itself to a local decision from which it would then have a choice of review procedures. Unlike the majority, I would not permit the taxpayer to game the system in this manner and thereby defeat the constitutional and statutory right of the Towns to make the initial decision whether to grant or deny its claims for refund.

I therefore respectfully dissent.

I am authorized to state that Chief Justice MULLARKEY and Justice EID join in this dissent.