The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 10, 2019

**2019COA154**

**No. 18CA0990, *Nesbitt v. Scott* — Eminent Domain — Private Condemnation — Attorney Fees; Civil Procedure — District Court Practice Standards — Costs and Attorney Fees**

A division of the court of appeals considers whether C.R.C.P. 121 § 1-22(2)(b) requires that a written fee agreement, or some other materials evidencing the fee agreement, accompany every motion for attorney fees and costs brought under section 38-1-122(1), C.R.S. 2019. The division concludes that C.R.C.P. 121 § 1-22(2)(b) does not impose such a requirement.

COLORADO COURT OF APPEALS　　　　　　　　　**2019COA154**

Court of Appeals No. 18CA0990
Pueblo County District Court No. 11CV490
Honorable Jill S. Mattoon, Judge

Rita A. Nesbitt, as trustee of the Rita A. Nesbitt Trust,

Petitioner-Appellant,

v.

Kathryn Y. Scott, Rodney A. Scott, and Vicki K. Scott,

Respondents-Appellees.

ORDER AFFIRMED

Division III
Opinion by JUDGE FURMAN
Webb and Brown, JJ., concur

Announced October 10, 2019

Fowler, Schimberg, Flanagan & McLetchie, P.C., Steven W. Fox, Golden, Colorado, for Petitioner-Appellant

Semler & Associates, P.C., R. Parker Semler, Jeremy Goldblatt, Denver Colorado, for Respondents-Appellees

¶ 1   In this appeal of an award of attorney fees and costs, we consider whether C.R.C.P. 121, section 1-22(2)(b) requires that a written fee agreement, or some other materials evidencing the fee agreement, accompany every motion for attorney fees and costs brought under section 38-1-122(1), C.R.S. 2019.  We conclude that C.R.C.P. 121, section 1-22(2)(b) does not impose such a requirement.

¶ 2   This case arose out of a property dispute between petitioner, Rita A. Nesbitt, trustee of the Rita A. Nesbitt Trust (Nesbitt), and respondents, Kathryn Y. Scott, Rodney A. Scott, and Vicki K. Scott (collectively the Scotts).  The dispute led to protracted litigation, including an action in trespass and private condemnation proceedings, that lasted nearly a decade and involved two reversals by divisions of this court.

¶ 3   Ultimately, the trial court awarded the Scotts $400,431.85 in attorney fees and $35,066.25 in costs.  Nesbitt mounts two challenges to this award of attorney fees and costs.  First, she contends that the trial court abused its discretion by awarding attorney fees and costs to the Scotts because C.R.C.P. 121, section 1-22(2)(b) required that the Scotts attach a written fee agreement,

or some other materials evidencing the fee agreement, to their motion for attorney fees and costs, but they did not do so. Second, she contends that she should not have to pay the award associated with a summary judgment motion that was ultimately unsuccessful because the motion "unnecessarily increased the length of the case." We disagree with each of Nesbitt's contentions and therefore affirm.

## I. The Property Dispute

¶ 4 Originally, the Scotts granted Nesbitt permission to construct a roadway across their land. When disagreement arose as to the size and character of the roadway, the Scotts revoked Nesbitt's permission. But Nesbitt continued to build the roadway. The Scotts then retained Semler & Associates, P.C. (Semler) to represent them in a trespass action against Nesbitt.

¶ 5 The trial court in the trespass action found that Nesbitt did "not possess any valid legal right (easement) to use [the Scotts'] lands" because she "may be able to acquire an easement by necessity" across the neighboring Middle Creek Properties.

¶ 6 Nesbitt then filed a petition in condemnation against the Scotts for "immediate possession of the roadway right-of-way"

across the Scotts' property. Nesbitt alleged in her petition that her property was "land locked" and that "access through the Scott parcel is indispensable to the practical use" of her property.

¶ 7 The Scotts again retained Semler to represent them. In a motion to dismiss, the Scotts claimed that Nesbitt was precluded from bringing a condemnation action because the trial court in the trespass action had determined that Nesbitt did not possess a valid legal right to cross the Scott parcel. But the district court denied this motion.

¶ 8 The Scotts then moved for summary judgment, arguing issue preclusion. This time, the district court granted the Scotts' motion, concluding "the elements for issue preclusion are established" because "there was a final judicial determination by this Court that Nesbitt has a viable common law easement by necessity" across the Middle Creek Properties.

¶ 9 Nesbitt appealed the district court's grant of summary judgment. A division of this court noted that the trial court in the trespass action "made a legal determination that Nesbitt had the right to *claim* an implied easement across" the Middle Creek Properties, but not that "the claim gave rise to an existing

3

easement." *Nesbitt v. Scott,* slip op. at 10 (Colo. App. No. 12CA2211, Aug. 22, 2013) (not published pursuant to C.A.R. 35(f)). Thus, the division reversed and remanded the case for an evidentiary hearing because the trial court did not make all the factual findings "necessary to adjudicate Nesbitt's private condemnation claim." *Id.* at 12.

¶ 10    On remand, after a three-day hearing, the trial court denied Nesbitt's petition in condemnation, finding that "an alternative route exists to gain access to the Nesbitt Property across a common law way by necessity." A division of this court later reversed the judgment dismissing Nesbitt's petition and remanded for the trial court to determine whether Nesbitt's alternative route provided Nesbitt with access to a public road. *Nesbitt v. Scott,* (Colo. App. No. 14CA2265, Apr. 28, 2016) (not published pursuant to C.A.R. 35(f)).

¶ 11    Meanwhile, the trial court held an evidentiary hearing and awarded the Scotts $173,838.30 in attorney fees and $27,559.87 in costs. Nesbitt appealed this award, contending that a party seeking attorney fees does not comply with C.R.C.P. 121, section 1-22(2)(b) "without a copy of the engagement letter or proof as to its terms."

But Nesbitt's appeal of this award was dismissed by stipulation of the parties after the division reversed and remanded to determine whether Nesbitt's alternative route provided her with access to a public road.

¶ 12    On remand, the trial court found that Nesbitt's alternative route connected with a public road and therefore dismissed Nesbitt's petition.  A division of this court affirmed this dismissal. *See Nesbitt v. Scott,* (Colo. App. No. 17CA1416, Oct. 4, 2018) (not published pursuant to C.A.R. 35(e)).

## II.  The Award of Attorney Fees and Costs

¶ 13    The Scotts filed another motion for an award of attorney fees and costs.  This motion was based on section 38-1-122(1), which provides: "If the court finds that a petitioner is not authorized by law to acquire real property or interests therein sought in a condemnation proceeding, it shall award reasonable attorney fees, in addition to any other costs assessed, to the property owner who participated in the proceedings."  § 38-1-122(1).

¶ 14    In a written order, the trial court initially noted that "neither [the Scotts] nor their counsel have been able to produce a copy of the written fee agreement."  But, said the trial court, "C.R.C.P. 121

§ 1-22(2)(b) does not state that failure to produce a written fee agreement requires the Court to deny a fee application, it only suggests that the written fee agreement should be attached to the fee application if it exists and is available." So, the trial court relied on other evidence, such as testimony that the Scotts

- signed a fee agreement;
- agreed to be bound to pay the hourly rates set forth in Semler's fee affidavits;
- received communications regarding rate increases and accepted those rate increases; and
- paid all fees.

¶ 15    And the court relied on testimony from R. Parker Semler, president of Semler, that a flat fee agreement was briefly discussed but never put in place. Given this evidence, the trial court concluded that the Scotts had adequately complied with C.R.C.P. 121, section 1-22(2)(b).

### III.  Standard of Review

¶ 16    We review a trial court's decision to award attorney fees for abuse of discretion. *See Crandall v. City of Denver*, 238 P.3d 659, 661 (Colo. 2010).  A trial court abuses its discretion if the award is

6

manifestly arbitrary, unreasonable, or unfair. *Planning Partners Int'l, LLC v. QED, Inc.*, 2013 CO 43, ¶ 12. Whether attorney fees are reasonable is a question of fact for the trial court; thus, we will not disturb its ruling on review unless patently erroneous and unsupported by the evidence. *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 16.

¶ 17    With this in mind, we turn to Nesbitt's contentions on appeal.

## IV.  Attorney Fees and Costs

¶ 18    We first consider whether the trial court abused its discretion by awarding attorney fees and costs to the Scotts because C.R.C.P. 121, section 1-22(2)(b) required that the Scotts attach a written fee agreement, or some other materials evidencing the fee agreement, to their motion for attorney fees and costs and they did not do so. We conclude that because C.R.C.P. 121, section 1-22(2)(b) did not impose such a requirement on the Scotts, the trial court did not abuse its discretion.

## A.  Interpretation of Statutes and Rules

¶ 19    We review the interpretation of statutes and rules of civil procedure de novo. *See MDC Holdings, Inc. v. Town of Parker*, 223 P.3d 710, 717 (Colo. 2010); *Strudley v. Antero Res. Corp.*, 2013 COA

106, ¶ 13, *aff'd*, 2015 CO 26.  When interpreting statutes, we "give effect to every word and render none superfluous."  *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005), *superseded by statute on other grounds*, Ch. 197, secs. 1-3, §§ 37-92-102, -103, -305, 2006 Colo. Sess. Laws 906-09.

¶ 20     And, when statutes and rules are clear and unambiguous, we will give effect to their plain and ordinary meaning.  *See City & Cty. of Broomfield v. Farmers Reservoir & Irrigation Co.*, 239 P.3d 1270, 1275 (Colo. 2010); *MDC Holdings*, 223 P.3d at 717.

     B.  Section 38-1-122(1) and C.R.C.P. 121, Section 1-22(2)(b)

¶ 21     Section 38-1-122(1) is clear and unambiguous.  In a condemnation proceeding, when a petitioner is not authorized by law to condemn real property, the court "shall award reasonable attorney fees, in addition to any other costs assessed, to the property owner who participated in the proceedings."  § 38-1-122(1).  This includes appellate fees incurred in any appeal from the underlying case.  *See Akin v. Four Corners Encampment*, 179 P.3d 139, 147-48 (Colo. App. 2007) (citing *Hartman v. Freedman*, 197 Colo. 275, 281, 591 P.2d 1318, 1322 (1979)).

¶ 22    The procedure governing a request for attorney fees is found in C.R.C.P. 121, section 1-22(2)(b), which reads, in pertinent part: "The motion shall be accompanied by any supporting documentation, including materials evidencing the attorney's time spent, the fee agreement between the attorney and client, and the reasonableness of the fees."

¶ 23    Nesbitt urges us to interpret C.R.C.P. 121, section 1-22(2)(b) as requiring every motion for attorney fees and costs, including the Scotts' motion, to be accompanied by a written fee agreement or some other written materials evidencing the fee agreement.  We disagree with this interpretation.

¶ 24    C.R.C.P. 121, section 1-22(2)(b) requires "any" documentation that supports a motion for attorney fees and costs to accompany the motion.  The word "any" modifies "supporting documentation" and is "used as a function word . . . to indicate one that is not a particular or definite individual of the given category but whichever one chance may select."  *Webster's Third New International Dictionary* 97 (2002).  Hence, the plain and ordinary language of C.R.C.P. 121, section 1-22(2)(b) does not specify that a "particular or definite" type of supporting documentation, such as a written fee

9

agreement, must accompany a motion for attorney fees and costs. *Id.*; *see Farmers Reservoir & Irrigation Co.*, 239 P.3d at 1275; *MDC Holdings*, 223 P.3d at 717; *Upper Gunnison River Water Conservancy Dist.*, 109 P.3d at 597.

¶ 25 And, while C.R.C.P. 121, section 1-22(2)(b) refers to "materials evidencing the attorney's time spent, the fee agreement between the attorney and client, and the reasonableness of the fees," we conclude that the rule refers to these "materials" as non-exhaustive examples of documentation that are "includ[ed]" in the category of "supporting documentation." Indeed, C.R.C.P. 121, section 1-22(2)(b) describes "supporting documentation" as "including" the enumerated "materials." *See Webster's Third New International Dictionary* 1143 (2002) (To "include" means "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate."). As discussed above, because the word "any" modifies the phrase "supporting documentation" in C.R.C.P. 121, section 1-22(2)(b), this rule does not require a particular type of "supporting documentation," including the particular "materials" identified in the rule, to accompany the motion.

¶ 26    Yet, Nesbitt contends that because Rule 1.5 of the Colorado Rules of Professional Conduct generally requires attorney fee agreements to be in writing, "it is reasonable to conclude that the legislature intended that submission of contemporaneous written documentation which memorializes the fee agreement, whether formal or informal, [be] a basic requirement for any application of attorney's fees." Because we conclude that the language of C.R.C.P. 121, section 1-22(2)(b) clearly provides that not every motion for attorney fees and costs must be accompanied by a written fee agreement, we need not look to Colo. RPC 1.5 in interpreting the rule. *See Crawford v. Melby*, 89 P.3d 451, 453 (Colo. App. 2003) ("In determining the meaning of procedural rules, we give the words their plain meaning, and if the language of the rules is clear and unambiguous, we need not look further to determine their meaning.").

¶ 27    Nesbitt also contends that our interpretation must be guided by CRE 1002-1004 (Colorado's best evidence rule), which requires an "original" to prove the content of a writing. We disagree. Again, because we have concluded that the language of C.R.C.P. 121, section 1-22(2)(b) clearly provides that not every motion for attorney

11

fees and costs must be accompanied by a written fee agreement, we need not look to a rule of evidence to guide our interpretation. *See Crawford*, 89 P.3d at 453.

¶ 28    Nesbitt also relies on *Ravenstar LLC v. One Ski Hill Place LLC*, 2016 COA 11, ¶¶ 60-66, *aff'd*, 2017 CO 83, for the proposition that unless the moving party's attorneys are salaried, C.R.C.P. 121, section 1-22(2)(b) requires a written fee agreement to accompany a motion for attorney fees. This reliance is misplaced.

¶ 29    In *Ravenstar*, a division of this court held that a written fee agreement need not accompany a motion for attorney fees when the moving party's attorneys worked as in-house counsel. *Id.* at ¶ 65. The division reasoned that "[b]ecause [the attorneys] were salaried, [the moving party] was not required to submit a fee agreement under C.R.C.P. 121, section 1-22(2)(b)." *Id.* But, contrary to Nesbitt's suggestion, the division in *Ravenstar* did not hold that section 1-22(2)(b) always requires a written fee agreement, except when the moving party's attorneys are salaried. The division in *Ravenstar* did not address the issue, raised in Nesbitt's appeal, of whether 1-22(2)(b) requires a written fee agreement or some other

materials evidencing the fee agreement to accompany a motion for attorney fees and costs.

## C. Analysis

¶ 30 Because C.R.C.P. 121, section 1-22(2)(b) does not require a written fee agreement or other materials evidencing the fee agreement to accompany a motion for attorney fees and costs, we conclude that the trial court did not abuse its discretion by awarding attorney fees and costs to the Scotts. *See Crandall*, 238 P.3d at 661. At the hearing, the Scotts asserted, and the trial court found, that the written fee agreement had been lost. So, the Scotts did not have to attach a written fee agreement to their motion for attorney fees and costs. *See* C.R.C.P. 121, § 1-22(2)(b).

¶ 31 Alternatively, Nesbitt contends that the Scotts had to produce a written fee agreement after Nesbitt objected to the lack of a written fee agreement in the 2015 evidentiary hearings. But Nesbitt has pointed to no authority, and we are not aware of any, that imposes this duty on the Scotts. And C.R.C.P. 121, section 1-22(2)(b) does not require a written fee agreement.

¶ 32 Nesbitt also contends, for the first time on appeal, that the trial court's award was unreasonable and unfair because Rodney

Scott did not produce "records of payment and/or copies of cancelled checks in his possession." Because Nesbitt did not raise this issue before the trial court, we decline to address it. *People v. Salazar*, 964 P.2d 502, 507 (Colo. 1998) ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal.").

## V. Summary Judgment

¶ 33    We next consider whether, as Nesbitt contends, the trial court "abused its discretion in awarding attorney fees associated with the Scotts' 2012 motion for summary judgment which was later reversed on appeal." We conclude that it did not.

¶ 34    The trial court granted the 2012 motion for summary judgment on the theory of issue preclusion, forgoing the originally planned possession hearing. But a division of this court held that summary judgment was improper and remanded for a possession hearing.

¶ 35    Nesbitt contends that the 2012 motion for summary judgment caused both parties to prepare twice for the immediate possession hearing and therefore unnecessarily increased attorney fees and costs. Nesbitt also contends that the 2012 motion for summary

14

judgment was "ill-conceived" because it reiterated arguments the Scotts had made in a previously denied motion to dismiss. We disagree with these contentions.

¶ 36    In assessing attorney fees and costs, the trial court did not find the Scotts' 2012 motion for summary judgment to be groundless, frivolous, untimely, or in bad faith. And, the Scotts were ultimately successful on the merits.

¶ 37    So, we cannot say the trial court abused its discretion in awarding attorney fees and costs associated with the 2012 motion for summary judgment. *See Payan,* ¶ 16.

## VI.  Conclusion

¶ 38    The trial court's award of attorney fees and costs is affirmed.

JUDGE WEBB and JUDGE BROWN concur.