The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 6, 2018

**2018COA134**

**No. 17CA1616 Barrett Corp. v. Lembke — Government — Special Districts — Inclusion of Territory — Material Modification of Service Plan; Civil Procedure — Injunctions — Preliminary Injunctions**

This case addresses denial of a preliminary injunction, for failure to show a reasonable probability of success on the merits, to prevent a special district from taxing minerals held by owners of a severed mineral estate and extracted by their surface lessees. The division agrees with the trial court that section 32-1-401(1)(a), C.R.S. 2017, of the Special District Act does not require consent of mineral estate owners and their lessees to expand the boundaries of a special district. The division also agrees that the special district's power to tax was not limited by an overlap in services with another district.

However, the division concludes that a reasonable probability of success was shown as to the special district's failure to obtain the board of county commissioners' approval of a material change in its service plan as required by section 32-1-207(2)(a), C.R.S. 2017, of the Special District Act. The case is remanded for the trial court to make further findings under the other *Rathke* factors and to reconsider whether a preliminary injunction should be entered.

COLORADO COURT OF APPEALS                                    2018COA134

Court of Appeals No. 17CA1616
Adams County District Court No. 17CV68
Honorable Jaclyn C. Brown, Judge

Bill Barrett Corporation and Bonanza Creek Energy, Inc.,

Plaintiffs-Appellants,

and

Noble Energy, Inc.,

Intervenor-Appellant,

v.

Robert Lembke; 70 Ranch L.L.C.; South Beebe Draw Metropolitan District,
f/k/a Bromley Park Metropolitan District No. 1; and United Water and
Sanitation District,

Defendants-Appellees.

JUDGMENT AFFIRMED, ORDER VACATED,
AND CASE REMANDED WITH DIRECTIONS

Division A
Opinion by JUDGE WEBB
Berger and Nieto*, JJ., concur

Announced September 6, 2018

Davis Graham & Stubbs, LLP, R. Kirk Mueller, Paul D. Swanson, Denver,
Colorado, for Plaintiffs-Appellants

Hogan Lovells US, LLP, Elizabeth H. Titus, Lacy G. Brown, Denver, Colorado,
for Intervenor-Appellant

Shook, Hardy & Bacon, LLP, S. Kirk Ingebretsen, Denver, Colorado, for
Defendants-Appellees Robert Lembke and 70 Ranch L.L.C.

Brown Dunning Walker PC, Douglas W. Brown, David C. Walker, Drew P. Fein, Denver, Colorado; Wass Campbell Rivera Johnson Velasquez LLP, Darrell G. Waas, Mikaela V. Rivera, Denver, Colorado, for Defendant-Appellee South Beebe Draw Metropolitan District

Hamre Rodriguez Ostrander Dingess PC, Donald M. Ostrander, Richard F. Rodriguez, Joel M. Spector, Denver, Colorado; Wass Campbell Rivera Johnson Velasquez LLP, Darrell G. Waas, Mikaela V. Rivera, Denver, Colorado, for Defendant-Appellee United Water and Sanitation District

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    Plaintiffs Bill Barrett Corporation and Bonanza Creek Energy, Inc., and intervenor Noble Energy, Inc., (collectively, lessees) appeal the trial court's order denying their motion for a preliminary injunction to prevent defendant South Beebe Draw Metropolitan District (South Beebe) from taxing oil and gas that lessees produce from the mineral estate underlying an approximately 13,000-acre tract (the 70 Ranch) located in unincorporated Weld County. Defendants Robert Lembke and 70 Ranch L.L.C. (the L.L.C.) own the surface estate, where all of lessees' well heads are located.[1] Lessees also appeal the court's entry of summary judgment on one of their claims.

¶ 2    We affirm the entry of summary judgment, vacate the denial of the motion for preliminary injunction, and remand for further findings consistent with this opinion.

I.  Nature and Course of Proceedings

¶ 3    On appeal, lessees raise three challenges to South Beebe's taxing authority. The trial court entered summary judgment on the

---

[1] The exact role of defendant United Water and Sanitation District was not developed at the hearing, but according to the amended complaint, "tax revenue collected from [lessees] by [South Beebe] have [sic] been spent and/or channeled to Defendant United Water."

first of these issues.

- Under section 32-1-401, C.R.S. 2017, the severed mineral estate[2] underlying the 70 Ranch could not be included within South Beebe because all the owners and lessees of that estate did not petition for and consent to inclusion.

- By including the 70 Ranch within its boundaries to further its regional operations in several counties, South Beebe modified its service plan, but did not obtain statutorily required approval from the board of county commissioners (BOCC) in each of the affected counties.

- By including the 70 Ranch within its boundaries, South Beebe violated section 32-1-107(2), C.R.S. 2017, because its services overlapped with those of Sand Hills Metropolitan District (Sand Hills).

¶ 4    Preservation of these contentions is undisputed.

¶ 5    Lessees obtained a temporary restraining order in the Weld County District Court that prohibited the Weld County Treasurer, who had collected the disputed taxes, from disbursing the monies

---

[2] "[A] conveyance which severs a mineral interest from the surface estate creates a separate and distinct estate." *Notch Mountain Corp. v. Elliott*, 898 P.2d 550, 556 (Colo. 1995).

to South Beebe.  Venue was transferred to the Adams County District Court.  That court held an evidentiary hearing on lessees' motion for a preliminary injunction.  Finding that lessees had not shown a reasonable probability of success on the merits, the court denied the motion for a preliminary injunction and dissolved the temporary restraining order.  Later, the court entered a final judgment under C.R.C.P. 54(b) and 56(h) against lessees on their section 32-1-401 claim.

¶ 6    Lessees appealed.  They requested that this court preserve the status quo by enjoining the treasurer from disbursing taxes collected to South Beebe.  A motions division of this court granted the requested relief, expedited briefing, and ruled that the appeal would be decided without oral argument.

## II.  Background

¶ 7    In 2009, Sand Hills included the 70 Ranch within its boundaries and began assessing ad valorem taxes on the oil and gas extracted from the mineral estate.  Much as lessees have done in this case, they challenged the taxes levied by Sand Hills and obtained summary judgment in Weld County District Court.  Both sides appealed.

¶ 8     In *Bill Barrett Corp. v. Sand Hills Metropolitan District*, 2016 COA 144, the division agreed with the district court that when Sand Hills included the 70 Ranch, the combination of its change in purpose and its complete shift in geography constituted a material departure from its 2004 service plan under section 32-1-207(2)(a), C.R.S. 2017. *Id.* at ¶¶ 21, 23, 30. The division also agreed that this material modification of the existing service plan required — but Sand Hills had not obtained — approval from the Weld County BOCC. *Id.* at ¶ 32. For these reasons, the division held that Sand Hills lacked taxing authority after 2009. *Id.* at ¶ 37.

¶ 9     Following the entry of summary judgment and before the *Sand Hills* appeal was filed, Lembke and the L.L.C. petitioned South Beebe to include the 70 Ranch. Lessees were not notified of this action. South Beebe resolved to include the 70 Ranch, agreed to assume development and construction of the regional water infrastructure commenced by Sand Hills, and committed to provide services to the 70 Ranch. The Adams County District Court approved inclusion of the 70 Ranch into South Beebe, as required by section 32-1-401(1)(c)(I), which states that "[i]f a petition [for inclusion] is granted [by the district's board] . . . , the board shall

. . . file [an order] with the clerk of the court, and the court *shall* thereupon order the property to be included in the special district." (Emphasis added.)[3]

## III. Law

### A. Preliminary Injunction Standard

¶ 10    "Preliminary injunctive relief is an extraordinary remedy designed to protect a [party] from sustaining irreparable injury and to preserve the power of the district court to render a meaningful decision following a trial on the merits." *Rathke v. MacFarlane*, 648 P.2d 648, 651 (Colo. 1982).

¶ 11    Preliminary "injunctive relief should not be indiscriminately granted"; rather, it should be granted sparingly, cautiously, and with the trial court's full conviction of the urgent necessity for the relief. *Id.* at 653. Before granting relief, the trial court must find that the moving party has shown:

> (1) a reasonable probability of success on the merits;
>
> (2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief;

---

[3] The order is not at issue in this appeal.

(3) that there is no plain, speedy, and adequate remedy at law;

(4) that the granting of a preliminary injunction will not disserve the public interest;

(5) that the balance of equities favors the injunction; and

(6) that the injunction will preserve the status quo pending a trial on the merits.

*Id.* at 653-54 (citations omitted). If the moving party fails to establish any criterion, injunctive relief is not available. *Id.* at 654.

### B. Special District Act

¶ 12    The General Assembly enacted the Special District Act (the Act) with the intent that special districts "promote the health, safety, prosperity, security, and general welfare" of their inhabitants and of the State of Colorado. § 32-1-102(1), C.R.S. 2017; *see also Sand Hills*, ¶ 15; *Todd Creek Vill. Metro. Dist. v. Valley Bank & Tr. Co.*, 2013 COA 154, ¶ 37. Special districts are political subdivisions of the state that possess proprietary powers. *Todd Creek*, ¶ 38. But they possess only those powers expressly conferred on them. *Sand Hills*, ¶ 15.

¶ 13    Once established, a special district must conform to its service plan "so far as practicable." § 32-1-207(1). Any material

6

modifications to the service plan must be approved by the appropriate governing authority. § 32-1-207(2)(a).

IV.  Standard of Review

¶ 14     Statutory interpretation is a question of law subject to de novo review. *See, e.g.*, *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010). Likewise, appellate courts review de novo the application of law to undisputed facts. *See Camp Bird Colo., Inc. v. Bd. of Cty. Comm'rs*, 215 P.3d 1277, 1281 (Colo. App. 2009). And the de novo standard applies to review of summary judgments. *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 2018 CO 54, ¶ 27.

¶ 15     "The grant or denial of a preliminary injunction lies within the sound discretion of the trial court." *MDC Holdings, Inc. v. Town of Parker*, 223 P.3d 710, 716 (Colo. 2010). Generally, the conclusion reached by the trial court will be not overturned unless it is manifestly unreasonable, arbitrary, or unfair. *Evans v. Romer*, 854 P.2d 1270, 1274 (Colo. 1993). "If, however, the issue being reviewed concerns only legal, rather than factual questions, a trial court's preliminary injunction ruling is subject to de novo appellate review." *State ex rel. Salazar v. Cash Now Store, Inc.*, 31 P.3d 161,

7

164 (Colo. 2001). The same is true when the ruling rested only on stipulated facts or documentary evidence. *MDC Holdings*, 223 P.3d at 716.

¶ 16 On review of a preliminary injunction, the trial court's factual findings will be upheld unless they are so clearly erroneous as to find no support in the record. *Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 846 (Colo. App. 2007).

¶ 17 Whether a special district's action constitutes a "material modification" of the service plan presents a question of law. *Indian Mountain Corp. v. Indian Mountain Metro. Dist.*, 2016 COA 118M, ¶¶ 59, 61-62. A court looks to the language of the service plan and gives effect to its plain and ordinary meaning. *See Todd Creek*, ¶¶ 10-11.

¶ 18 The standard of review as to whether material modifications were approved by the appropriate BOCC is unresolved. But in *Friends of the Black Forest Regional Park, Inc. v. Board of County Commissioners*, the division noted, "[t]he application of particular facts to a statute involves a mixed question of fact and law." 80 P.3d 871, 882 (Colo. App. 2003). Because whether the requisite approval was obtained will turn on particular facts, the mixed

question standard of review applies. *See also Hawes v. Colo. Div. of Ins.*, 65 P.3d 1008, 1017 (Colo. 2003) (case-by-case issue is mixed question). In mixed-question cases, an appellate court reviews the district court's factual findings for clear error and its legal conclusions as to those facts de novo. *Sheridan Redevelopment Agency v. Knightsbridge Land Co.*, 166 P.3d 259, 262 (Colo. App. 2007).

¶ 19    According to South Beebe, because the trial court's denial of a preliminary injunction is not a final judgment on the merits, review of the second and third issues can be only for an abuse of discretion. To the extent that some of the court's conclusions rested on documentary evidence or undisputed facts, however, we review de novo. And in any event, "[a] trial court abuses its discretion when it . . . misapplies the law." *Clubhouse at Fairway Pines, L.L.C. v. Fairway Pines Estates Owners Ass'n*, 214 P.3d 451, 456 (Colo. App. 2008).

## V. Discussion

### A. Application of Section 32-1-401(1)(a) to Owners and Lessees of Severed Mineral Estates

¶ 20    According to lessees, without their consent — as "fee owners"

9

— and that of the other mineral estate owners, the 70 Ranch — or at least the underlying mineral estate — could not have been included within South Beebe. South Beebe responds that because the mineral and surface estates are severed, only the surface owners needed to petition for and consent to inclusion, and all of them did.[4] Alternatively, South Beebe asserts that because lessees' well heads are located on the 70 Ranch, it could tax lessees' oil and gas production for that reason alone.

¶ 21 The following facts are undisputed. The mineral estate underlying the 70 Ranch has been severed from the surface estate. Lembke and the L.L.C. owned some but not all of the mineral estate. No other mineral estate owner petitioned for or consented to including this property within South Beebe. Nor did lessees.

¶ 22 In resolving this issue against lessees, the trial court found that the services provided by South Beebe did not benefit the subsurface mineral estate. Lessees do not challenge this finding.

¶ 23 First, we address whether mineral estate owners and lessees

_____

[4] Lembke and the L.L.C., South Beebe, and United Water and Sanitation District filed separate but similar answer briefs. To the extent that their arguments differ, breaking arguments out by party would be purposeless.

10

are "fee owners."  We answer affirmatively only as to mineral estate owners.  Because the parties agree — and the record supports — that not all of the mineral estate owners consented to the 70 Ranch's inclusion, we next consider whether South Beebe's services can benefit the mineral estate.  But since lessees do not argue that the mineral estate can benefit, we further conclude that lack of consent by all mineral estate owners does not preclude South Beebe from taxing lessees.

### 1.  Law

¶ 24    Section 32-1-401(1)(a) provides:

> The boundaries of a special district may be altered by the inclusion of additional real property by the fee owner or owners of one hundred percent of any real property capable of being served with facilities of the special district filing with the board a petition in writing requesting that such property be included in the special district.  The petition shall set forth a legal description of the property, shall state that assent to the inclusion of such property in the special district is given by the fee owner or owners thereof, and shall be acknowledged by the fee owner or owners in the same manner as required for conveyance of land.

11

The parties have not cited Colorado authority, nor have we found any, applying this section in the context of severed mineral estate owners or the interests of mineral lessees.

## 2. Application

### a. Is an Owner or a Lessee of a Severed Mineral Estate a "Fee Owner" Under the Statute?

¶ 25    Answering this question — which the trial court decided against lessees — involves statutory interpretation and application of law to undisputed facts, both subjects of de novo review. We first conclude that an owner of a severed mineral estate is a "fee owner."

¶ 26    "[W]hile in place, minerals are real property." *Smith v. El Paso Gold Mines, Inc.*, 720 P.2d 608, 609 (Colo. App. 1985). Unsurprisingly, then, our supreme court has concluded that "[a]n estate in oil and gas may be severed from the remainder of the realty, and as severed owned in fee simple." *Corlett v. Cox*, 138 Colo. 325, 333, 333 P.2d 619, 623 (1958); *accord Clevenger v. Cont'l Oil Co.*, 149 Colo. 417, 420, 369 P.2d 550, 551 (1962) ("Oil, gas and other mineral rights in lands may be severed and held by other than the owner of the surface, and a fee simple title thereto may vest in the person to whom said rights are granted.").

12

¶ 27      South Beebe's attempt to distinguish *Corlett,* on which

*Clevenger* relied, as limited to interpreting the phrase "reserves 1/2

of the usual 1/8 royalty" in a deed, falls short.  After all, the

supreme court framed the issue as follows:

> Does the Holcomb-Hamilton deed reserve *an
> estate in fee simple* to 1/16% of the oil and gas
> under the land in question, as found by the
> trial court, or do these words merely reserve
> the right to share in such oil and gas after it
> has been severed from the land and reduced to
> possession?

*Corlett,* 138 Colo. at 329, 333 P.2d at 621 (emphasis added).  Then

it rejected a request to overrule *Simson v. Langholf,* 133 Colo. 208,

217, 293 P.2d 302, 307 (1956), which noted, "an estate in fee

simple is thus created."

¶ 28      Of course, we are bound by our supreme court's case law.

*Bernal v. Lumbermens Mut. Cas. Co.,* 97 P.3d 197, 203 (Colo. App.

2003).  And in any event, South Beebe cites no contrary Colorado

authority.

¶ 29      South Beebe's reliance on statutes other than the Act, where

the legislature supposedly "distinguishes between fee owners and

mineral interest owners," is misplaced.  "[D]efinitions of somewhat

similar terms in other, generally unrelated statutes . . . do not

13

assist in deciding what the Legislature meant in this specific context." *Coal. of Concerned Cmtys., Inc. v. City of Los Angeles*, 101 P.3d 563, 566 (Cal. 2004); *see also Bertrand v. Bd. of Cty. Comm'rs*, 872 P.2d 223, 228 (Colo. 1994) ("[T]he interpretation of one statute by reference to an unrelated statute is an unreliable means of ascertaining legislative intent.").

¶ 30 For example, South Beebe cites section 24-65.5-101, C.R.S. 2017. But that section is limited to "surface development." And in any event, section 24-65.5-102(4), C.R.S. 2017, describes a "mineral estate" as an "interest in real property."

¶ 31 True, for purposes of municipal annexations, section 31-12-103(6), C.R.S. 2017, also cited by South Beebe, limits "landowner" to "the owner in fee of an undivided interest in the surface estate." But this subsection also recognizes an "undivided interest in the mineral estate" as being owned "in fee." *Id.*

¶ 32 Nor does South Beebe's parade of horribles that would supposedly flow from treating a severed mineral interest as fee ownership under section 32-1-401(1)(a) persuade us to read *Corlett* and *Clevenger* narrowly. Owners of the severed mineral estate underlying property to be included in a special district can be

identified through title examination and given notice. If the positions of surface and subsurface owners on inclusion diverge, the Act provides a remedy. *See, e.g.,* § 32-1-401(2)(a) (notice to all affected property owners, public hearings, and petitions to be excluded); § 32-1-401(3) (board of county commissioners decides petitions for exclusion based on the best interests of the district).[5]

¶ 33    In contrast, our supreme court has not addressed whether a severed mineral estate lessee also holds a fee simple interest. We conclude that such a lessee does not.

¶ 34    Lessees rely on *Maralex Resources, Inc. v. Chamberlain*, 2014 COA 5, ¶ 14, where the division acknowledged that "interests in oil and gas leases [are] characterized as interests in real property." However, the division did not reach the fee simple question, instead merely declining "to consider an oil and gas lessee's interest under common law landlord-tenant principles." *Id.* at ¶ 16. And in any event, the division held only that the lessee had standing to seek a prescriptive easement.

¶ 35    Still, lessees assert that a majority of states — or at least those

---

[5] Of course, marching this parade before the General Assembly could produce a legislative solution.

15

in the West — hold mineral interest leaseholds to be fee interests of the mineral estate. Yet, they cite cases from only three states. *See Somont Oil Co. v. A & G Drilling, Inc.*, 49 P.3d 598, 604 (Mont. 2002) ("[O]il and gas leases transfer to the lessee a fee simple determinable estate with the lessor retaining a possibility of reverter."), *overruled on other grounds by Johnson v. Costco Wholesale,* 152 P.3d 727 (Mont. 2007); *Maralex Res., Inc. v. Gilbreath,* 76 P.3d 626, 630 (N.M. 2003) ("The typical oil and gas lease grants the lessee a fee simple determinable interest in the subsurface minerals . . . ."); *Anadarko Petroleum Corp. v. Thompson,* 94 S.W.3d 550, 554 (Tex. 2002) ("A Texas mineral lease grants a fee simple determinable to the lessee.").

¶ 36    South Beebe responds that a broad reading of *Maralex* is foreclosed by *Coquina Oil Corp. v. Harry Kourlis Ranch,* 643 P.2d 519, 522 (Colo. 1982) (holding that a federal oil and gas lessee cannot assert the power of condemnation under Colorado Constitution article II, section 14 and section 38-1-102(3), C.R.S. 2017). Distinguishing lessees from owners, the supreme court explained that giving lessees condemnation powers "creates the possibility that the [property owners] will be subjected repeatedly to

16

the disruptive effect and expense of litigation as successive lessees attempt to secure a temporary right-of-way." *Id.* By contrast, "condemnation of a right-of-way by the fee owner of the landlocked estate does not create the same potential for a multiplicity of lawsuits. If the fee owner condemns the right-of-way, the taking is permanent and the appropriate compensation for the interests condemned is established in one proceeding." *Id.* The court added, "[w]hile the lessee's concern for both the leased property and the surrounding lands is limited in both subject matter and duration, the fee owner of the property will consider the broader implications of his actions over a more extensive period." *Id.* at 523; *cf. Precious Offerings Mineral Exch., Inc. v. McLain,* 194 P.3d 455, 455 (Colo. App. 2008) (rejecting easement claims by owner of unpatented mining claims).

¶ 37    The *Coquina* rationale is persuasive here. Because a mineral estate lessee's interest is temporary, its perspective on being included in a special district would be short term and potentially myopic. As well, a special district would possibly have to secure consent from each successive lessee. Thus, we agree that *Maralex* cannot be read as broadly as lessees assert.

17

¶ 38    Given all this, we decline to treat mineral lessees as fee owners for purposes of the statute.[6]  Still, our conclusion that each owner of the severed mineral estate beneath the 70 Ranch is a "fee owner" under the statute does not end the inquiry.

### b. Does a Severed Mineral Estate Constitute "Real Property Capable of Being Served With Facilities of the Special District" Under the Statute?

¶ 39    Answering this question — which the trial court decided against lessees — also involves application of law to undisputed facts.  Specifically, on appeal lessees do not dispute the trial court's finding that

> [m]ineral estates, located far beneath the surface, are not real property capable of being served with the facilities of the special district. Practically, the district cannot provide water and sanitary sewer[,] . . . park and recreation services[,] or any other services authorized by C.R.S. § 32-1-103(10) to the subsurface estate. The surface estate is the only real property in need of and capable of being provided the district's services.[7]

---

[6] Having decided this question against lessees, we need not address the numerous administrative and other practical problems that would allegedly ensue if mineral lessees are fee owners, which in any event are implied from the policy concerns in *Coquina.*

[7] Because lessees do not dispute this finding, we express no opinion on whether a district's services could actually benefit subsurface mineral estates.

18

¶ 40    Instead, they argue, first, that by statute *only* property capable of being benefitted by the special district may be taxed; and, second, that taxing property that cannot benefit from tax-funded services violates due process, citing *Landmark Towers Ass'n v. UMB Bank, N.A.* for support.  2018 COA 100, ¶ 29 ("Colorado law makes clear that imposing a special assessment on property that doesn't specially benefit from the funded improvements violates those property owners' rights to due process.").  We address, and reject, each argument in turn.

¶ 41    Lessees' first argument focuses on the phrase, "real property capable of being served with facilities of the special district." § 32-1-401(1)(a).  But this argument ignores that "capable of being served" modifies "fee . . . owners of . . . any real property."  *Id.* Thus, the phrase tells special districts which owners must petition for inclusion.  It does not limit what property may be included.

¶ 42    Lessees essentially ask us to read the statute as: "The boundaries of a special district may be altered by the inclusion of additional real property capable of being served with the facilities of the special district."  Yet, "[a]bsent constitutional infringement, it is not our province to rewrite the statutes."  *Dove Valley Bus. Park*

19

*Assocs., Ltd. v. Bd. of Cty. Comm'rs*, 945 P.2d 395, 403 (Colo. 1997).

¶ 43　Turning to lessees' due process argument, they do not provide a record reference to where they raised this issue in the trial court. And in any event, they did not mention it in their written closing argument, nor did the trial court rule on it.[8] *See McGihon v. Cave*, 2016 COA 78, ¶ 16 ("[I]n civil cases . . . '[w]e do not consider constitutional issues raised for the first time on appeal.'" (quoting *City & Cty. of Broomfield v. Farmers Reservoir & Irrigation Co.*, 239 P.3d 1270, 1276 (Colo. 2010))). And even if an appellate court may choose to take up such an unpreserved issue as a matter of discretion, we need not do so here. *See Tyra Summit Condos. II Ass'n v. Clancy*, 2017 COA 73, ¶ 8 ("Whether we address unpreserved constitutional challenges is always a matter of discretion."). However, the following observations may be relevant to the merits of the trial.

¶ 44　First, even were we to take up this unpreserved argument, under the injury-in-fact test, whether lessees would have standing

---

[8] Although *Landmark* was decided after the hearing, and after lessees had filed their opening brief, the decision lists several cases holding that property owners' due process rights are violated when their property does not benefit from special assessments. *Landmark Towers Ass'n v. UMB Bank, N.A.*, 2018 COA 100, ¶ 29.

to raise this issue on behalf of owners of the severed mineral estate is at best doubtful. This is not a case implicating unconstitutional spending, which can contribute to injury-in-fact. *Conrad v. City & Cty. of Denver*, 656 P.2d 662, 668 (Colo. 1982).

¶ 45    Second, assuming lessees have standing, this due process argument does not limit true ad valorem taxes. *See Landmark*, ¶ 31 (distinguishing such taxes from special assessments, which "fund local improvements that benefit particular property").

¶ 46    Third, *Landmark* involved a special assessment on one small area to benefit another small area. In contrast, South Beebe's service area encompasses thousands of acres and its water projects will benefit many inhabitants. *See Millis v. Bd. of Cty. Comm'rs*, 626 P.2d 652, 659 (Colo. 1981) ("A water district is organized not for the improvement of land or to benefit only landowners."); *see also Friends of Chamber Music v. City & Cty. of Denver*, 696 P.2d 309, 321 (Colo. 1985) ("As long as the proceeds are devoted to public and governmental purposes, otherwise valid taxes may be imposed upon a group of people who will not necessarily benefit from the funds collected.").

¶ 47    So, while ownership of a mineral estate is a fee simple interest,

21

we further conclude that it is not "real property capable of being served with facilities of the special district" under the statute. Therefore, the owners of the severed mineral estate underlying the 70 Ranch did not have to petition for or consent to the inclusion.

### c. Do Other Statutes Provide a Separate Basis for Ad Valorem Taxation?

¶ 48 Having rejected lessees' challenge to the 70 Ranch's inclusion based on the lack of all mineral estate owners' consent, we need not address other statutes that South Beebe advances as alternative bases for taxing lessees. *See* § 32-1-1101(1)(a), C.R.S. 2017; § 39-7-101(1), C.R.S. 2017.

### 3. Conclusion

¶ 49 The petition's failure to show consent of all severed mineral estate owners did not preclude including the 70 Ranch within the boundaries of South Beebe and did not invalidate South Beebe's taxing authority. Thus, we affirm the trial court's entry of summary judgment as to lessee's section 32-1-401(1)(a) claim.

### B. Application of Section 32-1-207(2)(a) to a Change in South Beebe's Original Service Plan

¶ 50 The trial court held that lessees had not shown a reasonable probability of successfully establishing that South Beebe had

22

violated section 32-1-207(2)(a) by failing to obtain BOCC approval for a material change in its original service plan. The court found that although South Beebe had continued to provide the same services, it had materially modified its service plan in 2013 by describing a regional role in its revised service plan. Even so, the court concluded that South Beebe had secured the requisite approval from the Adams County Planning & Development Department (planning commission). As for including the 70 Ranch in 2015, the court found that a material change had not occurred.

¶ 51    Lessees challenge both rulings. We conclude that South Beebe did not comply with section 32-1-207(2)(a). However, we agree with the trial court that including the 70 Ranch did not constitute a material modification.

### 1. Additional Background

#### a. Expansion of Services in 2013

¶ 52    The trial court first found that South Beebe had not made any "addition to the types of services provided by the special district," an event that categorically qualifies as a material modification under section 32-1-207(2)(a). It made the following subsidiary findings, with record support.

23

¶ 53    South Beebe was organized, along with other districts, in 1985

under a "Consolidated Service Plan" (original service plan).  The

original service plan outlined the proposed service area as "the

proposed development known as 'Bromley Park' . . . located in

northern Adams County, Colorado, generally between the City of

Brighton and Interstate 76."  The original service plan contemplated

that the districts would enter into intergovernmental agreements to

"effectively and efficiently provide the services and/or facilities

outlined" in the original service plan.

¶ 54    Bromley Park Metropolitan District #1, South Beebe's former

name, proposed to provide "[t]he sanitary sewer, storm drainage

and surface and flood control, street, water and park and recreation

plans for the District."

¶ 55    Since its formation, South Beebe has expanded its geographic

scope and purpose.  In 2003, the district changed its name to South

Beebe to better describe the regional nature of the services and

facilities the district provided.  In 2013, South Beebe prepared an

"Updated and Revised Service Plan" (revised service plan) that

reflected many of these changes.

¶ 56    At that time, the property located within the boundaries of

South Beebe was much smaller — less than one acre in Adams County. But the revised service plan contemplated adding other property so that, as development progressed, South Beebe could provide regional service to those developments and for operation and maintenance of South Beebe's overall storm drainage system.

¶ 57 Then the court turned to whether South Beebe's providing services beyond the geographic boundaries of Bromley Park to the larger South Beebe Draw area constituted a change of a basic or essential nature. The court found, again with record support, that the revised service plan anticipated including property in both Adams and Weld Counties. Although the services that South Beebe contemplated providing were of a type for which the district had been originally formed, the benefitted residents of Adams and Weld Counties far exceeded those within the district's original geographical boundaries.

¶ 58 The court concluded:

> South Beebe's shift in purpose, from providing facilities and services for the proposed Bromley Park residential and commercial development located near Brighton, Colorado to a regional district reaching beyond Brighton and providing benefits to Adams County (and contemplating providing services to Weld

25

County) constituted a change to the basic and essential nature of the 1985 Original Service Plan.

South Beebe does not challenge this conclusion.

¶ 59   Next, the court concluded that the revised service plan constituted a material modification requiring approval by the Adams County BOCC.  The court relied on *Sand Hills*, which stated that "the district's shift in purpose, reflected in the 2013 plan, from a localized district providing for residential and commercial development in Lochbuie to a regional district reaching beyond Lochbuie and providing regional benefits to the county constituted a change to the basic and essential nature of the 2004 plan."  ¶ 23. South Beebe does not challenge this conclusion either.

¶ 60   Then the court turned to whether South Beebe had obtained the requisite approval.  It found that in response to South Beebe's submitting the revised service plan to the planning commission for approval, South Beebe had received a letter from the planning commission.[9]  According to this letter, Adams County had

---

[9] South Beebe points us to two other sources of approval from Adams County — statements from the Adams County Attorney and a separate letter from the Adams County Community and Economic

determined that South Beebe was not seeking a material modification.  But the letter continued:

> [South Beebe] has expressly stated that it does not wish to do any of those things that would constitute a material modification under State Statute.  Rather, the district simply would like to replace its current Service Plan in its entirety, to describe their ongoing and future services to users of the District's infrastructure.  So long as the replacement Service Plan does not contemplate anything constituting a material modification, then the County is without the authority to approve it.

¶ 61    The court noted that under section 32-1-202(1)(a), C.R.S. 2017, a service plan must be "referred to the planning commission," if required by the policy of the county.  However, because at the preliminary injunction hearing no party had called a witness from the planning commission or the Adams County BOCC, the court recognized that it did not know whether Adams County has such a policy, whether the planning commission had actually reviewed the revised service plan, or whether (as might be inferred from the letter) it had relied only on the representation by South Beebe that the district was not doing "any of those things that would constitute

---

Development Director.  The trial court made no findings as to either source.

27

a material modification under State Statute."

¶ 62 Despite these reservations, the court further concluded, "it appears that South Beebe sought approval from the appropriate governing authority[10] for the 2013 Revised Service Plan." The court explained that in this way, this case was distinguishable from *Sand Hills.* So, it ruled that lessees had failed to show a reasonable probability of success on the merits.

b. Including the 70 Ranch

¶ 63 The court also considered whether including the 70 Ranch in 2015, if effective, was a material modification of the revised service plan requiring approval from both the Adams and Weld County BOCCs. It found that no such modification had occurred. The court made the following findings, again with record support.

¶ 64 In 2013, South Beebe and Weld County entered into an "Intergovernmental Agreement Concerning Inclusion of Property" (IGA), which recognized the expanded regional scope of the district's facilities and services. As acknowledged by the IGA, and not disputed at the hearing, South Beebe received petitions to include

---

[10] Because South Beebe had not yet expanded into Weld County, only Adams County BOCC approval was required for the 2013 revised service plan.

certain property located in unincorporated Weld County to be used for storm drainage ponds and facilities to serve anticipated development in the area.

¶ 65    The IGA recitals provide:

> D.  South Beebe has no other property within its boundaries that lies in unincorporated Weld County, therefore, pursuant to statute, South Beebe advised the County of the petitions and requested that the County find that the inclusions do not constitute material modifications of the South Beebe service plan.
>
> E.  The County is willing to consent to the inclusion of property into South Beebe within Weld County pursuant to this IGA.

¶ 66    In paragraph 2 of the IGA, Weld County conditioned its consent to including land in the county on the following:

> a.  South Beebe receives a petition from a landowner for such inclusion;
>
> b.  South Beebe acts in accordance with the provisions of § 32-1-207, [C.R.S.], with regard to overlapping special districts;
>
> c.  South Beebe acts in conformance with the provisions of § 32-1-207(2)(b)-(d), [C.R.S.], with regard to the provision of service in unincorporated Weld County and, in particular, South Beebe shall not impose extraterritorial fees on any landowner in unincorporated Weld County without the written consent of such landowner; and

29

> d. South Beebe does not attempt to include property without the consent of the landowner utilizing the provisions of § 32-1-401(2), [C.R.S.].

¶ 67   With respect to material modification, paragraph 3 provides:

> South Beebe Draw agrees that if the inclusion of property into its boundaries that lies within unincorporated Weld County occurs in contravention of any of the provisions of paragraph 2 above, such action shall constitute a material modification of its service plan and South Beebe shall be subject to a service plan amendment process with the County and the inclusion of property which triggers such service plan amendment shall be ineffective until such time as the [BOCC] of Weld County approve such service plan amendment.

¶ 68   But South Beebe did not petition to include any Weld County property in 2013 or 2014, after the IGA was executed. Then on April 1, 2015, South Beebe told the Weld County BOCC that it had received a petition for inclusion of Weld County property from Highland Equities, L.L.C. Weld County responded by noting that no further action was required in light of the IGA. On that basis, South Beebe motioned the Weld County District Court and received an order for inclusion of the Highland Equities property on April 17, 2015. No party at the preliminary injunction hearing argued that the Highland Equities property was not properly included in South

30

Beebe.

¶ 69    On April 5, 2015, in response to the trial court's summary judgment against Sand Hills, Lembke and the L.L.C. petitioned to include the 70 Ranch in South Beebe. South Beebe did not give Weld County notice of the petition. On April 28 and 29, 2015, South Beebe motioned the court to add more Weld County property to the district — including the 70 Ranch. The court granted the motions on April 29, 2015.

¶ 70    The trial court recognized that while section 32-1-207(1) requires the "facilities, services, and financial arrangements" of the special district to conform to the approved service plan, that section does not mention the "geographic boundaries" of a special district. The court also noted that section 32-1-207(2)(a) indicates approval for modification "shall not be required . . . for changes in the boundary of the special district." Still, "inclusion of property that is located in a county . . . with no other territory within the special district may constitute a material modification of the service plan." § 32-1-207(2)(a).

¶ 71    The statute also prescribes the procedure to include property located in a county having no other property within the special

31

district. If a special district changes its boundaries

> to include territory located in a county . . .
> with no other territory within the special
> district, the special district shall notify the
> [BOCC] of such county . . . of such inclusion.
> The [BOCC] . . . *may* review such inclusion
> and, if it determines that the inclusion
> constitutes a material modification, *may*
> require the governing body of such special
> district to file a modification of its service plan
> in accordance with the provisions of this
> subsection (2).

§ 32-1-207(2)(a) (emphasis added).

¶ 72    Based on these statutes and the IGA, the court further found that South Beebe had notified Weld County of its original intent to include Weld County property within its boundaries in 2013 and Weld County had the opportunity to determine whether that inclusion constituted a material modification. As reflected in the IGA, Weld County determined that the proposed inclusion was not a material modification, so South Beebe could include the property without formal service plan modification approval, subject to the conditions identified in the IGA.

¶ 73    When South Beebe first included Weld County property in 2015, Weld County did not require formal approval at that time, referencing the IGA. And once South Beebe had Weld County

32

property within its boundaries, including more Weld County property, specifically the 70 Ranch, presumptively was not a material modification under section 32-1-207(2)(a). On this basis, the court concluded that the case was distinguishable from *Sand Hills*.

¶ 74    For these reasons, the court ruled that lessees did not have a reasonable probability of success on the merits as to their claim that South Beebe's including the 70 Ranch was an unapproved material modification of the service plan.

## 2.  Law

¶ 75    As set forth above, the Act determines most questions involving material modifications to service plans and the requisite approvals. The Act defines "material modifications" as

> changes of a basic or essential nature, including but not limited to the following: Any addition to the types of services provided by the special district; a decrease in the level of services; a decrease in the financial ability of the district to discharge the existing or proposed indebtedness; or a decrease in the existing or projected need for organized service in the area.

*Indian Mountain,* ¶ 61 (quoting § 32-1-207(2)(a)). And if South Beebe made such a modification without obtaining the requisite

33

approval, then it "did not have taxing authority." *Sand Hills*, ¶ 37. And a court may enjoin action constituting a material modification. § 32-1-207(3)(a).

### 3. Application

#### a. Expansion of Services in 2013

¶ 76    South Beebe does not challenge the trial court's finding, discussed in Part V.B.1.a, *supra,* that "the district's provision of services beyond the geographic boundaries of Bromley Park to the larger South Beebe Draw area constituted a change of a basic or essential nature," and thus materially modified its service plan. This finding means that South Beebe had to obtain BOCC approval. § 32-1-207(2)(a).  The only question, then, is whether — as the court concluded — actions by the planning commission, the Adams County Attorney, and the Community and Economic Development Director satisfied this requirement.  We conclude that they did not.

¶ 77    The facts as found by the trial court are undisputed.  South Beebe submitted the revised service plan only to the planning commission.  The planning commission responded that the district "is not seeking a material modification."  But the BOCC did not take

*any* action.[11]

¶ 78    In support of its argument that the planning commission's letter was sufficient approval, South Beebe relies on section 32-1-202(1)(a) — "the service plan shall be referred to the planning commission." But this statute affords South Beebe no shelter for at least three reasons.

¶ 79    First, because the parties did not offer any evidence that Adams County had a policy of referring service plans to the planning commission, the trial court found its existence indeterminable for the purposes of the preliminary injunction. Second, section 32-1-202(1)(a) requires the planning commission to make a recommendation to the BOCC, which did not happen. And third, the BOCC never set, much less held, a public hearing — the final requirement in section 32-1-202(1)(a).

¶ 80    Given these procedural defects, South Beebe seeks to rely on the Adams County Attorney's purported determination that the revised service plan was not a material modification. But the

---

[11] Contrast this total lack of Adams County BOCC action with the IGA the Weld County BOCC entered into with South Beebe, in which Weld County acknowledged South Beebe's proposed inclusions and determined they were not material modifications.

county attorney did not testify, and the trial court made no such finding. As well, the testimony cited by South Beebe concerning purported action by the Adams County Attorney is double hearsay and conflates such action with the letter discussed in the following paragraph.

¶ 81　　South Beebe also refers to a letter from the Community and Economic Development Director saying that, as to the revised service plan, "we do not find the need to process these changes through any formal Adams County review process." But the statute does not allow the director to act for the BOCC. § 32-1-207(2)(a) ("[M]aterial modifications . . . may be made . . . only by petition to and approval by *the board of county commissioners . . . .*") (emphasis added); *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22 (courts do not add to or subtract words from a statute).

¶ 82　　Based on supposed action by the Adams County Attorney and the letter from the director, South Beebe asserts that, "[i]n essence, the Adams County [BOCC] exercised its discretion . . . consistent with the permissive language of C.R.S. § 32-1-207(2)(a)." This assertion misses the mark, both factually and legally.

¶ 83　　First, whatever South Beebe means by "in essence" is unclear. The statute requires ultimate, not delegated, action by the BOCC. § 32-1-207(2)(a) ("[M]aterial modifications . . . may be made . . . *only* by petition to and approval by the [BOCC] . . . .") (emphasis added); *see also Weitz Co. v. Mid-Century Ins. Co.*, 181 P.3d 309, 313 (Colo. App. 2007) ("'[O]nly' is a term of limitation."). And that did not occur.

¶ 84　　Second, South Beebe conflates two separate provisions of this section. A special district may make a material modification "only by petition to and approval by the [BOCC]." § 32-1-207(2)(a). Still, approval is not required "for changes in the boundary of the special district," although "[t]he [BOCC] . . . *may* review such inclusion." *Id.* (emphasis added). The latter discretionary language applies only to boundary changes; it does not change the approval mandated for other changes. And the boundary change question is addressed separately below.

¶ 85　　But even accepting all of South Beebe's arguments, the trial court still found, albeit only for purposes of the preliminary injunction, that the revised service plan was a material modification. True, "findings made by a trial court after a

37

preliminary injunction hearing are not determinative of the ultimate merits of the case." *Phoenix Capital*, 176 P.3d at 839. But we do not understand, nor does South Beebe explain, why a similar finding after a trial on the merits would not trump contrary determinations by the county attorney, if any, and the director.

¶ 86 The trial court also noted that under the revised service plan, South Beebe would submit any potential material modification to "the County Planning and Development staff for determination of whether the modification is material." But section 32-1-207(2)(a) does not refer to action by a county planning commission. It mandates "approval by the [BOCC]." South Beebe cites no authority, nor are we aware of any in Colorado, holding that a party subject to a statutory requirement can somehow unilaterally dilute that requirement.

¶ 87 Finally, South Beebe's assertion that "because the Trial Court found that the District properly sought approval from the Adams County [BOCC], the Trial Court did not abuse its discretion" misses the mark in two ways.

¶ 88 First, the court referred to "the appropriate governing authority," not to "the Adams County BOCC." If the court

considered the planning commission to be "the appropriate governing authority," it made an error of law.

¶ 89 Second, and more importantly, to the extent that the court focused on South Beebe's having "sought approval," the statutory requirement of BOCC approval is not measured by a special district's efforts to obtain that approval. § 32-1-207(2)(a) ("by petition to *and* approval by the [BOCC]") (emphasis added); *UMB Bank*, ¶ 22. In other words, even if in good faith South Beebe had perceived the planning commission as a stand in for the BOCC, South Beebe made a legal error. And the trial court's analysis overlooked it.

¶ 90 For all of these reasons, we conclude that lessees have a reasonable probability of success in establishing that South Beebe did not obtain the requisite Adams County BOCC approval.[12] Because the trial court dissolved the temporary restraining order and denied a preliminary injunction on this ground alone, without reaching the other *Rathke* factors, we remand the case to the court

---

[12] Our holding is limited to the particular facts presented. We express no opinion on the outcome under other scenarios, such as if the planning commission had gone to the BOCC and been told there was no material modification or if a BOCC refuses to take further action on a proper application by a special district.

to consider the other *Rathke* factors, make findings as to those factors, and reconsider whether a preliminary injunction should be entered. *See Anderson v. Applewood Water Ass'n*, 2016 COA 162, ¶ 1.

### b. Inclusion of the 70 Ranch

¶ 91   Lessees also assert that the trial court erred in concluding that South Beebe's including the 70 Ranch was not a material modification. We reject this assertion.

¶ 92   Because section 32-1-207(2)(a) exempts "changes in the boundary of the special district" from the BOCC approval requirement for material modifications, boundary changes alone are presumptively not material modifications. *See Beeghly v. Mack*, 20 P.3d 610, 613 (Colo. 2001) ("[T]he inclusion of certain items implies the exclusion of others.").

¶ 93   In contrast, a change that involves "inclusion of property that is located in a county . . . with no other territory within the special district *may* constitute a material modification." § 32-1-207(2)(a) (emphasis added). In this latter situation, the district must give the county notice; but the county need not approve the inclusion. *Id.* ("The [BOCC] . . . *may* review such inclusion . . . .") (emphasis

added).  And "'may' denotes a grant of discretion." *Gerganoff*, 241 P.3d at 937.  And as for including additional property in a county that the special district already occupies, the statute does not even require that the district give notice.

¶ 94     Lessees push back on the presumption that boundary changes are not material modifications.  As they see it, *Sand Hills* held that an inclusion of "substantial acreage" — such as the 70 Ranch's 13,000 acres — is in and of itself a material modification.  But *Sand Hills* does not bear the weight lessees place on it.

¶ 95     Granted, the division did say that the "geographic shift in 2009 to include the 70 Ranch property . . . was . . . a material modification," and that "inclusion of the 70 Ranch property . . . changed [Sand Hills'] basic or essential nature, because new, substantial acreage (13,000 acres)" was added.  *Sand Hills*, ¶¶ 32-33.  But the division did not rest its conclusion solely on the fact or size of the inclusion.  Rather, it focused on three aspects of the district's conduct: "the 2009 addition of the 70 Ranch property," "the 2011 complete geographic shift to the 70 Ranch property (removing all Lochbuie property)," and "the district's shift from a local focus with the purpose of providing local necessities for the

41

construction of the Altamira Development to a regional focus providing services beyond Lochbuie's boundaries." *Id.* at ¶ 20.

¶ 96 The 70 Ranch property was the same when South Beebe later included it. But unlike Sand Hills, South Beebe did not have only a "local focus," limited to servicing the needs of a particular development, before it included the 70 Ranch. Rather, as the trial court found,

> [o]ver the many years since its formation, South Beebe entered into a number of intergovernmental agreements and expanded its geographic scope and purpose. In 2003, the district changed its name to South Beebe to better describe the regional nature of the services and facilities being provided.

¶ 97 As well, the trial court concluded that South Beebe's 2013 revised service plan described "a shift in purpose" from a local to a regional service provider. On this basis, *Sand Hills* is distinguishable. Unlike in *Sand Hills*, South Beebe's shift from a local to a regional service provider was incremental, beginning in 2003 — long before the 70 Ranch was included. But Sand Hills remained a local provider *until* it included the 70 Ranch. Thus, the mere size of the 70 Ranch did not make its inclusion a material modification; rather, the inclusion changed the "basic or essential

nature" of Sand Hills. In contrast, because South Beebe had already taken on a regional role, the inclusion simply expanded the region South Beebe served.

¶ 98   Still persisting, lessees argue that the exemption from BOCC approval should be limited by the word "only." *See* § 32-1-207(2)(a) ("Approval for modification shall not be required for changes necessary *only* for the execution of the original service plan or for changes in the boundary of the special district . . . .") (emphasis added). In other words, according to lessees, boundary changes could be material modifications requiring BOCC approval if those changes necessarily encompass other changes, particularly "[a]ny addition to the types of services provided." *Id.*

¶ 99   To bolster this interpretation, lessees explain that along with including the 70 Ranch, South Beebe undertook other projects begun by Sand Hills that found no mention in South Beebe's original service plan, such as "construction of a 6,000 acre foot reservoir" located on the 70 Ranch. And lessees assert that this undertaking added to the types of services South Beebe provided, a modification the statute explicitly labels as material. *See* § 32-1-207(2)(a).

¶ 100    To begin, the word "only" in section 32-1-207(2)(a) modifies the phrase "for the execution of the original service plan," not "for changes in the boundary of the special district." *See Holliday v. Bestop, Inc.*, 23 P.3d 700, 705 (Colo. 2001) ("Words and phrases [in our statutes] shall be . . . construed according to the rules of grammar and common usage." (quoting § 2-4-101, C.R.S. 2017)) (alteration in original).[13]

¶ 101    Even so, we perceive no basis on which to interpret the exemption clause — "[a]pproval for modification shall not be required . . . " — as precluding application of the prior sentence requiring approval for certain identified material modifications — "approval of modifications shall be required [as to] . . . changes of a basic or essential nature, including but not limited to the following: . . . ." § 32-1-207(2)(a); *see also City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 608 (Colo. 2005) ("Exceptions to the general laws should be narrowly construed.  The legislature, not the court, should expand these exceptions if desirable.") (citation

_____

[13] Although we have not found a Colorado case dealing with a similar grammatical structure, in comparing the two phrases, each describes a separate category of change; and "only" appears in the first category, but not the second.

omitted).  In other words, we agree with lessees to the extent that if a boundary change also resulted in other changes of "a basic or essential nature," BOCC approval would be required.

¶ 102    Still, this interpretation leads to the question whether South Beebe added to its types of services when it took over projects previously proposed by Sand Hills for the 70 Ranch.  The trial court expressly found that South Beebe had not added to the types of services provided.  The record supports this conclusion.

¶ 103    Sand Hills' 2013 revised service plan — which lessees argue was applicable to the 70 Ranch — proposed to provide "construction, acquisition and installation of local and regional public improvements, including street and traffic signals, and water, sewer, storm drainage and park and recreation facilities." Likewise, South Beebe's 2013 revised service plan proposed "construction, acquisition, installation and maintenance of streets and safety control, street lighting, landscaping, storm drainage, television relay, water, sanitary sewer, transportation, mosquito control, and park and recreation improvements and facilities."

¶ 104    Every type of service Sand Hills had proposed was also proposed by South Beebe.  By including the 70 Ranch, South Beebe

did not propose any services beyond what Sand Hills had proposed. And to the extent minor variations in the proposed services language exist, the court's conclusion is still consistent with the definition of "type." *See State v. Kalman*, 887 A.2d 950, 955 (Conn. App. Ct. 2006) ("According to the American Heritage Dictionary of the English Language (New College Ed. 1981), the word 'type' is defined as: '1. A group of persons or things sharing common traits or characteristics that distinguish them as an identifiable group or class; a kind; category.'").

¶ 105    Lessees attempt to shift the focus away from *types* of services to specific projects Sand Hills planned on completing. This argument falls short. The statute does not address — and the trial court properly did not consider — the addition of specific projects.

¶ 106    Given all this, we agree with the trial court that because South Beebe's including the 70 Ranch was not a material modification, no BOCC approval was required. And unlike in *Sand Hills*, because South Beebe had previously included other property in Weld County, it did not even have to provide notice to Weld County before including the 70 Ranch.

¶ 107    Lessees assert that in the IGA, Weld County had improperly

given advance consent to a material modification — which ripened when South Beebe included the 70 Ranch.  But the trial court found that in the IGA, South Beebe had given Weld County notice of its intent to include property located in that county.  As well, South Beebe gave specific notice of its intent to include the Highland Equities property.  The county responded that no further action would be necessary.  These findings are undisputed.  Nor have lessees raised any procedural defects in the Highland Equities property inclusion.

¶ 108    For these reasons, this assertion need not be resolved.  And because the IGA is not in play, we also need not decide whether South Beebe failed to comply with the IGA by acting on a petition that did not include all owners of the mineral estate underlying the 70 Ranch.

¶ 109    In the end, we conclude that because including the 70 Ranch was not a material modification, the trial court acted within its discretion in ruling that lessees had not shown a reasonable probability of success in challenging inclusion of the 70 Ranch as an unapproved material modification.

C. Application of Section 32-1-107(2) to Possible Overlap of South Beebe's and Sand Hills' Services Within the 70 Ranch

¶ 110  Lastly, lessees contend that under section 32-1-107(2), South Beebe cannot levy and collect taxes to support services if those services are already being provided by another special district. Specifically, they continue, because the 70 Ranch property remains within Sand Hills, South Beebe is unlawfully taxing them to provide some of the same services that Sand Hills provides.

1. Additional Background

¶ 111  The trial court concluded that lessees had not shown a reasonable probability of success on the merits of this claim for two reasons.

¶ 112  First, the trial court considered the *Sand Hills* division's conclusion that because the 2009 geographic shift from a local to a regional service provider was a material modification, the attempted inclusion of 70 Ranch into Sand Hills without the approval of the Weld County BOCC violated the Act. The court explained that "[a] natural reading of the Court of Appeals' decision is that inclusion of 70 Ranch was ineffective absent appropriate approval. Thus, it is unclear to the Court whether the 70 Ranch property is within or

without the geographic boundaries of Sand Hills."

¶ 113   Second, the court read section 32-1-107(2) as "not necessarily preclud[ing] one district from including property within the boundaries of another district; rather the statute prohibits one district from providing the same service as another district."  Then the court observed "it was not controverted at the preliminary injunction hearing that Sand Hills currently is not developing or constructing the regional water infrastructure or providing the regional water services South Beebe intends to provide."

¶ 114   Lessees assert that the 70 Ranch remained in Sand Hills and that they raised with the trial court whether South Beebe provided services overlapping those of Sand Hills.

### 2.  Law

¶ 115   Under section 32-1-107(2), subject to an exception not relevant to this case, "no special district may be *organized* wholly or partly within an existing special district providing the same service." (Emphasis added.)  This section "prohibits the *creation of a new* district within an overlapping geographical area being served by an existing district rendering similar services."  *Jefferson Ctr. Metro. Dist. No. 1 v. N. Jeffco Metro. Recreation & Park Dist.*, 844 P.2d

1321, 1325 (Colo. App. 1992) (emphasis added); *see also Plains Metro. Dist. v. Ken-Caryl Ranch Metro. Dist.*, 250 P.3d 697, 702 (Colo. App. 2010) ("That Act prevents a district from *organizing* within the boundaries of 'an existing special district providing the same service,' unless various approvals are received.") (emphasis added) (citation omitted). The parties have not cited, nor have we found, any other authority interpreting this statute.

### 3. Application

¶ 116    As to the trial court's first reason, the *Sand Hills* division did not say whether Sand Hills' violation of section 32-1-207(2)(a) — by adding the 70 Ranch property without notice to or approval by Weld County — voided the inclusion of that property. The division's silence on this point is consistent with the parties' claims, which dealt only with the district's legal authority to collect taxes and a possible refund.

¶ 117    Recall, under section 32-1-207(3)(a), a court may enjoin action constituting a material modification. But the Act neither empowers a court to void a material modification for lack of approval nor provides that such a modification made without the required BOCC approval is void. The parties do not cite, nor have we found,

Colorado authority answering this question.

¶ 118     In *Upper Bear Creek Sanitation District v. Board of County Commissioners*, 715 P.2d 799, 802 (Colo. 1986), the court said "[a]s a special district organized pursuant to the 1965 Act, the District's modified service plan required approval of the Board before the changes contemplated therein could be implemented."  Like the Act, the supreme court could have said that the modified service plan was void for lack of approval, but it did not do so.

¶ 119     For these reasons, we decline the invitation to decide whether the *Sand Hills* decision voided the 70 Ranch's inclusion into Sand Hills.  Thus, because, at the time of the preliminary injunction hearing, the 70 Ranch *could have* remained in Sand Hills, we turn to the trial court's second reason.

¶ 120     Beginning where the trial court did, we also read section 32-1-107(2) as prohibiting overlapping services, not merely overlapping territory.  As to the court's finding that overlapping services was not raised at the preliminary injunction, an appellate court "is obligated to search the record for evidence to support the findings of fact."  *Bockstiegel v. Bd. of Cty. Comm'rs*, 97 P.3d 324, 328 (Colo. App. 2004).  And we will decline to consider an issue

51

raised for the first time on appeal. *See, e.g., State of Colo. Dep't of Health Care Policy & Fin. v. S.P.*, 2015 COA 81, ¶ 29.

¶ 121   The question of overlapping services was raised before the hearing. Intervenor Noble Energy's reply in support of the motion for a preliminary injunction noted, "South Beebe attempts to argue that it is not providing overlapping services in violation of C.R.S. § 32-1-107(2)." However, the thrust of this argument was whether the 70 Ranch remained in Sand Hills: "the Weld County District Court's orders make clear that South Beebe may not include and provide services for [the] 70 Ranch while it is still within Sand Hills, which is organized to provide the same services." Noble Energy's reply brief did not discuss any evidence of overlapping services. And as noted above, lessees' written closing argument did not mention overlapping services.

¶ 122   True, after the hearing, lessees filed a notice of supplemental authority "relevant to Plaintiffs' argument that the same property cannot be included within two districts providing the same services." Defendants objected to the supplemental authority, arguing in part:

> Given that Sand Hills [lost] its taxing authority and ability to receive revenue, it is indisputable that Sand Hills can no longer provide services. Thus, there can be no overlapping services with South Beebe and exclusion of [the] 70 Ranch from Sand Hills is immaterial to whether the inclusion of [the] 70 Ranch into South Beebe is proper.

¶ 123 But none of these filings called the trial court's attention to services that were — or were not — overlapping. Instead, the parties alerted the trial court to the legal question of whether the 70 Ranch remained in Sand Hills. And no party asked the court to resolve the factual question of overlapping services.

¶ 124 Therefore, we conclude that the question of whether services overlapped is not properly before us. *See Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1087 (Colo. 2011) (To preserve an issue for appeal, the attorney must present arguments that "alert[] the trial judge to the impending error." (quoting *Am. Family Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 325 (Colo. 2009))).

## VI. Conclusion

¶ 125 The trial court's entry of summary judgment on the lessees' claim under section 32-1-401(1)(a) is affirmed. The court's order denying lessees' motion for a preliminary injunction is vacated

53

based on our holding that the lessees established a reasonable likelihood of success on the merits as to whether South Beebe violated section 32-1-207(2)(a) by failing to obtain Adams County BOCC approval.

¶ 126    On remand, the trial court must consider the remaining *Rathke* factors, make findings of fact on each of those factors, and reconsider whether to enter a preliminary injunction.  The temporary injunction previously entered by this court, subject to compliance with any bonding orders entered by the trial court, will remain in effect until the trial court enters its renewed ruling on the motion for preliminary injunction.  The temporary injunction entered by this court will automatically dissolve upon the entry of the trial court's order on remand granting or denying the motion for preliminary injunction.

JUDGE BERGER and JUDGE NIETO concur.

54